**ABB FLAKT, INC., a corporation of the State of Delaware, Plaintiff Below, Appellant,**

v.

**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Birmingham Fire Insurance Company of Pennsylvania, First State Insurance Company, Twin City Fire Insurance Company, Atlantic Mutual Insurance Company, Centennial Insurance Company, International Insurance Company, and Aetna Casualty and Surety Company, Defendants Below, Appellees.**

No. 299, 1998.

Supreme Court of Delaware.

Submitted: June 8, 1999.
Decided: June 28, 1999.

Donald E. Marston, Sullivan & Marston, P.A., Wilmington, and William C. Eustace (argued) and Tracy Alan Saxe (argued), Saxe, Eustace & Vita, P.C., New Haven, Connecticut, for appellant.

Anthony G. Flynn and Timothy Jay Houseal, Young, Conaway, Stargatt & Taylor, LLP, Wilmington and M. Elizabeth Medaglia (argued), Robert N. Kelly, Peter von Mehren, Jackson & Campbell, P.C., Washington, D.C., for appellees National Union Fire Insurance Company of Pittsburgh, Pa. and Birmingham Fire Insurance Company of Pennsylvania.

Donald M. Ransom, Casarino, Christman & Shalk, Wilmington, and Wendy L. Mager (argued) and Lisa Dorio Ruch, Smith, Stratton, Wise, Heher & Brennan, Princeton, New Jersey, for appellees Atlantic Mutual Insurance Company and Centennial Insurance Company.

Sherry Ruggiero Fallon, Tybout, Redfearn & Pell, Wilmington, for appellees First State Insurance Company and Twin City Fire Insurance Company.

Paul Cottrell, Tighe, Cottrell & Logan, P.A., Wilmington, and Jeffrey A. Goldwater, Arthur F. Brandt, and Ann M. Edmonds, Bollinger, Ruberry & Garvey, Chicago, Illinois, for appellee International Insurance Company.

Richard K. Herrmann and Mary B. Matterer, Blank, Rome Comisky & McCauley, LLP, Wilmington, and Richard T. Lunger, Rivkin, Radler & Kremer, Uniondale, New York, for appellee Aetna Casualty & Surety Company.

Before VEASEY, Chief Justice, WALSH, HOLLAND, HARTNETT and BERGER, Justices, constituting the Court en Banc.

WALSH, Justice:

In this appeal we review the Superior Court's grant of summary judgment in two consolidated declaratory judgment actions relating to "advertising injury" policy provisions contained in general liability insurance policies. The Superior Court ruled that the underlying provisions were unambiguous and did not provide coverage for patent infringement. The court found that patent infringement did not fall within the enumerated offenses set forth in the pertinent provisions and, even assuming that it did, there was no causal connection between the underlying patent infringement and the insured's advertising activities.

While we do not adopt the Superior Court's analysis of policy ambiguity, we affirm on an alternative basis: that, as a matter of law, the underlying patent infringement actions for which the insured sought coverage neither "arose out of" nor "occurred in the course of" the insured's advertising activities. Accordingly, on that alternative basis, we affirm the judgment of the Superior Court.

I

ABB Flakt, Inc. ("Flakt") is a Delaware corporation engaged in the business of producing flue gas desulferization ("FGD") systems designed to filter sulfur dioxide from the flue gas emitted from power plant smoke stacks. Flakt has its principal place of business in Atlanta, Georgia. Flakt contends that in order to sell its FGD technology to potential customers, it built and operates a demonstration plant at its Georgia facility.

In 1989, Flakt was sued for patent infringement in the United States District Court for the District of Delaware. The plaintiff in that action, Joy Technologies, Inc. ("Joy") sought injunctive relief and damages, claiming that Flakt "has made, used and sold and continues to make, use and sell facilities and apparatus, the operation of which" infringes United States Patent No. 4,279,873 (the "873 patent") covering a process for flue gas desulferization. Joy holds the exclusive right to sue under the 873 patent. In this action ("Joy I"), Flakt was alleged to have directly infringed, induced infringement of, and contributorily infringed the 873 patent. In January 1992, a jury in Joy I rendered a verdict against Flakt and judgment was entered on February 3, 1992 upholding the validity and enforceability of the 873 patent and finding infringement.

Joy filed a second action against Flakt on March 30, 1992, ("Joy II"). In this action it was alleged that Flakt and other related or affiliated companies "have made, used, and sold, and continue to make, use and sell, systems, facilities and apparatus, the operation of which" infringes the 873 patent. In Joy II, Joy also alleged that defendants "themselves engaged in the operation of at least certain of such systems, facilities and apparatus in such a manner as to infringe" the 873 patent. In Joy II, Joy raised certain collateral estoppel issues based on the judgment in Joy I. Again Joy charged Flakt with direct infringement, inducing infringement and contributory infringement.

In November 1994, Flakt filed the underlying declaratory judgment actions against eight insurance companies (collectively "the insurers")[1] seeking a determination that the activities which led to the patent litigation was covered by the advertising injury provisions of its policies.

1. Those insurance companies are: Aetna Casualty and Surety Company ("Aetna"); Atlantic Mutual Insurance Company ("Atlantic"); Birmingham Fire Insurance Company of Pennsylvania ("Birmingham"); Centennial Insurance Company ("Centennial"); First State Insurance Company ("First State"); International Insurance Company ("International"); National Union Fire Insurance Company of Pittsburgh, P.A. ("National"); and Twin City Fire Insurance Company ("Twin City"). The claims against two other insurer defendants, Continental Casualty Company and Transportation Insurance Company, were dismissed.

The insurers sold general liability insurance policies to Flakt and Combustion Engineering, Inc. ("Combustion") from 1981–1992. Combustion, a Delaware corporation with its principal place of business in Connecticut, is a co-defendant in Joy II. The Superior Court found that all of the insurance policies at issue were substantially similar with inconsequential differences. The policies contained essentially two definitions[2] for "advertising activity" or "advertising injury" which Flakt advances as the basis for the insurers duty to defend and indemnify. These definitions are:

> "Advertising injury" means injury arising out of an offense committed during the policy period occurring in the course of the named insured's advertising activities, if such injury arises out of libel, slander, defamation, violation of a right of privacy, piracy, unfair competition, or infringement of copyright, title or slogan.

> or

> "Advertising Liability" means libel, slander, defamation, infringement of copyright, title or slogan, piracy, unfair competition, idea misappropriation or invasion of rights of privacy committed, or alleged to have been committed in any advertisement, publicity article, broadcast or telecast and arising out of the Named Insured's advertising activities.

A third provision provided:

Advertising injury means injury arising out of one or more of the following offenses

> a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organizations['] goods, products or services
>
> b. Oral or written publication of material that violates a person's right of privacy
>
> c. Misappropriation of advertising ideas or style of doing business or
>
> d. Infringement of copyright, title or slogan.

■ The insurers moved for summary judgment asserting that, as a matter of law, it owed no duty to Flakt to defend, or indemnify for judgments arising from, the patent infringement litigation. The Superior Court stayed all discovery pending briefing on the summary judgment motions of the insurers. Flakt argued that there was a need for discovery regarding choice of law[3] and intent of coverage. The Superior Court continued the discovery stay after finding that the primary issue was one of contract construction.

## II

■ We first consider Flakt's contention that the Superior Court erred as a matter of law and/or abused its discretion by granting a stay of discovery while requiring it to respond to the insurers' motions for summary judgment. Flakt contends that both *Mann v. Oppenheimer & Co.*, Del.Supr., 517 A.2d 1056 (1986) and

---

**2.** Flakt contends that there are four different provisions. The fourth provision, however, includes only policies by the two insurers who were dismissed from the case.

**3.** Flakt failed to raise in its opening brief its claim regarding discovery on choice of law and therefore it is deemed waived. *Murphy v. State*, Del.Supr., 632 A.2d 1150, 1152 (1993). In any event, Georgia, Connecticut, and Tennessee, the other jurisdictions whose law allegedly might apply, follow the plain meaning rule. Ga.Code Ann. § 13–2–3; *Park 'N Go of Georgia, Inc. v. United States Fidelity and Guaranty Co.*, 266 Ga. 787, 471 S.E.2d 500, 503 (1996); *Hansen v. Ohio Casualty Insurance Co.*, 239 Conn. 537, 687 A.2d 1262, 1264–65 (1996); *Stephan v. Pennsylvania General Insurance Co.*, 224 Conn. 758, 621 A.2d 258, 261 (1993); *Standard Life Ins. Co. v. Hughes*, 203 Tenn. 636, 315 S.W.2d 239, 241–42 (1958); *Ballard v. North American Life and Casualty Co.*, Tenn.Ct.App., 667 S.W.2d 79, 82–83 (1983); *ShoLodge, Inc. v. Travelers Indemnity Co. of Illinois*, 6th Cir., 168 F.3d 256, 259 (1999).

*Levy v. Stern,* Del.Supr., No. 211, 1996, 1996 WL 742818 (Dec. 20, 1996), support a finding that the Superior Court abused its discretion in denying it discovery while facing a summary judgment motion. The insurers counter that the Superior Court correctly concluded that discovery was unnecessary because the policy provisions being construed were unambiguous, and therefore did not require resort to extrinsic evidence.[4]

■ This Court reviews a trial court's application of discovery rules for abuse of discretion. *American Insurance Co. v. Synvar Corp.,* Del.Supr., 199 A.2d 755, 757 (1964); *Mann v. Oppenheimer & Co.,* Del. Supr., 517 A.2d 1056, 1061 (1986).

■ A stay of discovery is appropriate where a potentially case dispositive motion is pending, and there is no prejudice to the non-moving party. The disposition of such motion without the delay and expense of discovery serves to relieve the proponent of an unnecessary burden. *Schick Inc. v. Amalgamated Clothing and Textile Workers Union,* Del.Ch., C.A. No. 9066, 1987 WL 12450 at *2 (June 18, 1987). The party seeking the stay, however, carries the burden of justifying the elimination of important procedural devices available to most litigants. *Corporate Property v. AmerSig Graphics, Inc.,* Del.Ch., C.A.

No. 13241, 1993 WL 534986 at *1 (Dec. 9, 1993).

■ In this case, the insurers claimed that disposition of the summary judgment motion was appropriate without discovery because they placed in the record the complaints for the underlying patent infringement actions. The patent infringement actions had been described in Flakt's complaint, but not attached as exhibits.[5] Since the issue of coverage turns on the claims made by the plaintiffs in the patent actions and the ultimate recovery, it would appear that this is one of those rare cases where discovery is not required. In any event, the issue of whether the Superior Court abused its discretion in granting the stay of discovery is inextricably intertwined with the correctness of its rulings on the ambiguity of the advertising injury provisions and lack of establishment of a causal connection. Because, as hereafter discussed, we hold that the Superior Court properly granted summary judgment, the court's grant of a stay of discovery was, at most, questionable. We take the occasion, however, to emphasize that discovery on the issue of contractual intent is usually appropriate whenever the provisions in controversy are reasonably or fairly susceptible of different interpretations or meanings.

---

4. Atlantic, National, and International assert that Flakt "failed to appeal" from the August 15, 1995 Superior Court decision to continue the stay and the September 29, 1995 order denying reargument, implying a potential waiver. Although the court granted the motion to stay on August 15, 1995, it did so in terms of a continuation of the March 23, 1995 order which stated that all discovery was stayed until further order of the court. Therefore, even though the better practice would have been to include the two subsequent orders in its notice of appeal, the ground or scope of the appeal was not significantly altered as Flakt clearly provided notice of its appeal from the stay of all discovery. *See* Supr.Ct.R. 7(c); *State Personnel Comm. v. Howard,* Del.Supr., 420 A.2d 135, 138 n. 4 (1980). Additionally, Flakt stated in its notice that it appealed from the "Final order granting summary judgment to defendants Below–Appellees on Plaintiff's complaint without

permitting Plaintiff to conduct any discovery whatsoever." This statement creates sufficient ambiguity for resolution by the Court. *See Trowell v. Diamond Supply Co.,* Del.Supr., 91 A.2d 797, 802 (1952).

5. Flakt's characterizations of the Joy lawsuits in its complaints pushes the outer limits of liberal construction. For example, regarding Joy II, Flakt states that "Joy claims that in the conduct of their business, [Flakt] committed an offense ... in the course of advertising activities involving [the 873 patent]." And, "Joy claims that [Flakt] ... infringed, induced infringement, and sold through advertising activities" and "unfairly excluded Joy from the FGD market by advertising sales and services of, and selling, the allegedly offending FGD technology." A review of the Joy II complaint does not provide the advertising nexus Flakt advances.

## III

Turning to the merits of the Superior Court's grant of summary judgment, we note that this Court reviews a decision granting summary judgment *de novo*. *Arnold v. Society for Savings Bancorp, Inc.*, Del.Supr., 650 A.2d 1270, 1276 (1994). In doing so this Court determines whether the record shows that there is no genuine issue of material fact so that the moving party is entitled to judgment as a matter of law. *Id.* This Court reviews the interpretation of contract language, including policies of insurance, *de novo*. *Emmons v. Hartford Underwriters Ins. Co.*, Del.Supr., 697 A.2d 742, 745 (1997).

The language of the insurance policy determines the scope of the coverage obligation. *Id.* When the language is "clear and unequivocal, a party will be bound by its clear meaning." *Id., quoting Hallowell v. State Farm Mut. Auto. Ins. Co.*, Del.Supr., 443 A.2d 925, 926 (1982); *E.I. du Pont de Nemours & Co. v. Allstate Ins. Co.*, Del.Supr., 693 A.2d 1059, 1061 (1997). If ambiguity exists in the policy language, it is strongly construed against the insurer. *Emmons*, 697 A.2d at 745; *Phillips Home Builders, Inc. v. Travelers Ins. Co.*, Del.Supr., 700 A.2d 127, 129 (1997). Whether policy language is ambiguous turns on whether "the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings ." *Phillips*, 700 A.2d at 129, *quoting, Rhone–Poulenc Basic Chemicals Co. v. American Motorists Ins. Co.*, Del.Supr., 616 A.2d 1192, 1196 (1992).

Flakt contends that the Superior Court erred by holding that it failed to demonstrate that its advertising activities caused the alleged "piracy" in the form of patent infringement. Flakt argues that the language "in the course of" used in the policies does not mean "caused by" but refers to a relationship of "time, place or circumstance." Flakt further asserts that the term "advertising activities" could reasonably be construed as meaning "goods, products or services sold, offered for sale or advertised" and that the demonstration plant "combines the infringing piracy and advertising activities."

The insurers contend that the underlying Joy actions do not meet the requirement of alleging an offense "occurring in the course of" or "arising out of" advertising activities. The insurers argue that "every jurisdiction to interpret this language has found that this requirement of the policy is unambiguous." National points out that the Federal Circuit, when considering the permissible scope of an injunction against Flakt in the Joy litigation, indicated that the "trigger for Flakt's patent liability" was the actual use of power plants by Flakt's customers, and not the advertising, contract to build, or actual building of the plant. *See Joy Technologies, Inc. v. Flakt, Inc.*, Fed.Cir., 6 F.3d 770 (1993).

After finding that the advertising injury provisions of the policies did not reasonably encompass patent infringement, the Superior Court held that "[e]ven had the [c]ourt found that the term patent infringement was an enumerated offense, [Flakt] would have been unable to successfully argue that the patent infringement arose out of Flakt's advertising activities," as nearly "every court" having ruled on that issue has found that "patent infringement does not arise out of the insured's advertising activities." *ABB Flakt, Inc. v. National Union Fire Ins. Co. of Pittsburgh, P.A.*, Del.Super., No. 94C–11–024–JEB, 1998 WL 437137 at *9 (June 10, 1998). The Superior Court found the reasoning in *Iolab Corp. v. Seaboard Surety Co.*, 9th Cir., 15 F.3d 1500 (1994) to be persuasive, and concluded that it would not "cast aside the rule that there be a causal connection between the advertising injury and the predicate offense." 1998 WL 437137 at *9. In essence, the Superior Court held that the policy provisions unambiguously required a causal connection between Flakt's advertisements and the

patent infringement, and having found that none was established, summary judgment was appropriate. We agree.

The vast majority of courts have held that claims made pursuant to the advertising injury policy provisions which provide that the injury "arise out of" or occur "in the course of" the insured's advertising activities must be supported by a causal connection between that injury and the activities. *See Advance Watch Co., Ltd. v. Kemper National Ins. Co.*, 6th Cir., 99 F.3d 795, 806 (1996) (finding that the policy "requires some nexus between the ground of asserted liability and the insured's advertising activities before there is coverage or a duty to defend"); *Everest and Jennings, Inc. v. American Motorists Ins. Co.*, 9th Cir., 23 F.3d 226, 229 (1994) (holding "[t]o compel an insurer to defend under an advertising injury provision, the insured must demonstrate a causal connection between the plaintiff's claim in the underlying action and the defendant-insured's advertising"); *Iolab*, 15 F.3d at 1505–06 (holding required causal nexus not established); *Novell, Inc. v. Federal Ins. Co.*, 10th Cir., 141 F.3d 983, 989–90 (1998) (finding that there must be a demonstration of "a necessary connection between the alleged offense and advertising" of the products); *Atlantic Mutual Ins. Co. v. Brotech Corp.*, E.D.Pa., 857 F.Supp. 423, 429–30 (1994), *aff'd*, 3d Cir., 60 F.3d 813 (1995) (finding that "courts have consistently held that there must be a causal connection between the injury alleged in the underlying complaint and the insured's advertising activity"); *Davila v. Arlasky*, N.D.Ill., 857 F.Supp. 1258, 1262–63 (1994) (holding that there must be a "proximate causal connection between the advertising activity and the patent infringement, and ... that the alleged 'advertising activity' which causes the injury must occur in the very act of advertising"). Some courts, applying a California statute barring coverage for a loss caused by a wilful act, have also held that a claim for inducing patent infringement does not arise out of advertising activities. *Aetna Casualty and Surety Co. v. Superior Court*, 19 Cal. App.4th 320, 23 Cal.Rptr.2d 442, 448–49 (1993); and *Intex Plastics Sales Co. v. United National Ins. Co.*, 9th Cir., 23 F.3d 254, 256–57 (1994). We agree with the Superior Court that this body of authority is persuasive.

Flakt's assertion that the demonstration plant provides the required nexus or causal connection fails with respect to both Joy I and Joy II. A review of both Joy complaints, even if analyzed to determine the actual cause of the injury and not directed by the language and terminology used by the Joy plaintiffs, does not reveal the required causal connection between the alleged "advertising injury" and the "advertising activities" of Flakt. Although it asserts that the demonstration plant was integral to securing customer interest in its FGD technology, Flakt has not alleged that the specific customers identified in the Joy actions were brought to the demonstration plant. In short, there is no claim that its demonstration plant activities, even if broadly viewed as "advertising" were either alleged or proven in the Joy actions as a basis for recovery. We conclude, therefore, that there is no genuine issue of material fact regarding the establishment of a causal connection between the patent infringement and Flakt's advertising injuries as unambiguously required by the policy provisions.

Because we find that the Superior Court properly granted summary judgment on the basis of a lack of a causal connection, it is unnecessary for this Court to determine whether patent infringement falls within the enumerated offenses listed in the advertising injury provisions of the respective policies.

The judgment of the Superior Court is AFFIRMED.