**GENENCOR INTERNATIONAL, INC., a Delaware Corporation, Plaintiff Below, Appellant,**

v.

**NOVO NORDISK A/S, Defendant Below, Appellee.**

**No. 120, 2000.**

Supreme Court of Delaware.

Submitted: Oct. 11, 2000.
Decided: Nov. 17, 2000.

Jon E. Abramczyk, Rodger D. Smith, Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware, of counsel, Matthew B. Lehr, Cooley Godward LLP, Palo Alto, California, for appellant.

M. Duncan Grant, Tara L. Lattomus, Andrea B. Unterberger, Pepper Hamilton LLP, Wilmington, Delaware, of counsel, Philip J. Katauskas, Robert S. Nix, Pepper Hamilton LLP, Philadelphia, Pennsylvania, for appellee.

BEFORE: VEASEY, Chief Justice, HOLLAND and STEELE, Justices.

VEASEY, Chief Justice.

In this appeal, we review a holding of the Court of Chancery granting a remedy for breach of contract. Appellant argues that the Court of Chancery erred in denying the full relief sought below. Because we think that the Court of Chancery correctly analyzed the contractual intent of the parties, we affirm.

### Facts and Contentions of the Parties

The parties to this appeal, Genencor International, Inc., ("Genencor") and Novo Nordisk A/S ("Novo Nordisk"), are competitors in the industrial enzyme business. As part of a settlement of patent infringement litigation, the parties entered into a License Agreement (the "Agreement") dated March 23, 1998. Under the Agreement, Genencor was licensed to develop

two "Licensed Products" using specified Novo Nordisk protease patents.[1] Paragraph 2.2(a) of the Agreement grants Genencor a license to develop one Licensed Product (the "2.2(a) product") using up to five published patents owned by Novo Nordisk. In contrast, paragraph 2.2(b) of the Agreement grants Genencor a license to develop a second Licensed Product (the "2.2(b) product") using the same five published patents and, in addition, a set of unpublished patents. In effect, therefore, Genencor could develop the 2.2(a) product without any risk of infringing the published patents specified in the Agreement, and could develop the 2.2(b) product free of any infringement risk with respect to both the published and unpublished patents specified in the Agreement.[2] Accordingly, only one of the Licensed Products contemplated by the Agreement could benefit from a Novo Nordisk patent application that was unpublished at the time of the Agreement.

Paragraph 1.02 of the Agreement contains a list of the five unpublished patents under which Genencor was licensed to develop the 2.2(b) product. It also contains a representation and warranty that the five unpublished patents listed are the "only" unpublished patents that needed to be disclosed. The purpose of this representation and warranty is central to this dispute.

Genencor contends that the purportedly complete list of five unpublished patents had two purposes. First, it specified the unpublished patents under which the 2.2(b) product was licensed. Second, the list was an assurance to Genencor that the 2.2(a) product it would later develop would be subject to suit for infringing only the five unpublished patents listed and not more. On this view, paragraph 1.02 defined the

scope of litigation risk facing the 2.2(a) product.

Novo Nordisk explains the purpose of the paragraph 1.02 representation differently. It contends that the list of five unpublished patents had one purpose. That purpose was to define the scope of the affirmative rights granted to Genencor in paragraph 2.2(b) of the Agreement. In support of this view, Novo Nordisk points out that the 2.2(a) product was licensed only under published patents, and that the list of unpublished patents therefore does not affect Genencor's rights with respect to the 2.2(a) product. Novo Nordisk also points out that the technology claimed by the unpublished patents was unknown to Genencor at the time of the Agreement. Therefore, Genencor cannot have been looking to the list of five unpublished patents for the purpose of defining its exposure to patent infringement litigation against the 2.2(a) product.

On May 5, 1998, 43 days after the Agreement had been executed, Novo Nordisk informed Genencor that an unpublished patent had been inadvertently omitted from the list of five unpublished patents in paragraph 1.02 of the Agreement. Novo Nordisk proposed that the Agreement be amended by adding the sixth unpublished patent to the list, allowing the 2.2(b) product to be developed under all six of the unpublished patents. Genencor refused, proposing instead that the unpublished patent be treated for all purposes under the Agreement as a published patent, which would not only affect the 2.2(b) product but would also give Genencor the right to develop the 2.2(a) product under the omitted unpublished patent. In effect, under Genencor's proposal, Novo Nordisk would be estopped from asserting the sixth unpublished pat-

1. Genencor was also licensed to develop a third product that is not relevant to this dispute. Proteases are enzymes that can be used in laundry detergents to remove stains left by proteinaceous substances, such as bloodstains or grass stains.

2. Whether a patent is published or unpublished refers to the status of the patent application. Although rules in different countries vary, patent applications are generally not published, and therefore not publicly available, until 18 months after the first application in a patent family has been filed.

ent against either of the Licensed Products. Novo Nordisk did not accept this proposal, and Genencor subsequently brought this suit in the Court of Chancery.

### Proceedings in the Court of Chancery

In its First Amended Complaint, Genencor sought a declaration that Novo Nordisk was estopped from asserting any patent infringement claims based on the omitted unpublished patent. It also sought damages in light of alleged research and marketing costs incurred in reliance on the representation and warranty. Later, Genencor moved for summary judgment on the estoppel claim. This motion dropped the claim for damages but attempted to reserve the right to revive that claim if equitable relief was not granted. The Court of Chancery denied the motion for summary judgment. The Court of Chancery also found that the omission of the sixth unpublished patent was a breach of the Agreement, and directed the parties to file cross-motions for summary judgment setting forth the appropriate estoppel remedy.

After the parties submitted their cross-motions, the Court of Chancery issued a ruling from the bench that granted estoppel with respect to the 2.2(b) product but not with respect to the 2.2(a) product. The basis of this decision is that the 2.2(a) product could not have been developed under any unpublished patents, whether there were five or six of them. The Court of Chancery then held that, because there had been no detrimental reliance, equitable estoppel was not appropriate on that basis either. Genencor appeals, seeking a broader estoppel that applies not only to 2.2(b) but also to 2.2(a).

Genencor argues on appeal that the Court of Chancery erred in "requiring" a showing of detrimental reliance. Genencor also argues that the Court of Chancery misunderstood the contractual intent of the parties as embodied in the representation and warranty contained in paragraph 1.02 of the Agreement. The parties agree that there are no issues of material fact, and that the dispute should be resolved according to the language of the contract.

### Legal Issues

■ The ultimate issue in this case is whether the remedy Genencor seeks is an appropriate remedy for Novo Nordisk's breach of warranty. That remedy is estoppel with respect to the 2.2(a) product, in addition to that already granted with respect to the 2.2(b) product. In our view, resolution of this issue turns on whether this remedy would be faithful to the bargain struck in the Agreement. It is a basic principle of contract law that remedy for a breach should seek to give the non-breaching the party the benefit of its bargain by putting that party in the position it would have been but for the breach.[3] This requires us to determine the intent of the parties.

The parties disagree initially about the kind of remedy Genencor is seeking. Novo Nordisk argues that Genencor is seeking equitable estoppel and contends that the Court of Chancery properly required a showing of detrimental reliance.[4] Genencor agrees with the premise that the Court of Chancery required detrimental reliance, but argues that this was error because the estoppel remedy Genencor is seeking is not equitable estoppel. Before analyzing the intent of the parties in light of the Agreement, we will address Novo

---

3. *See* Restatement (Second) of Contracts § 344(a) (1981) (defining "expectation interest" as a party's interest in "having the benefit of his bargain by being put in as good a position as he would have been in had the contract been performed").

4. *See VonFeldt v. Stifel*, Del.Supr., 714 A.2d 79, 87 (1998) ("To make out a claim of equitable estoppel, plaintiff must show that he was induced to rely detrimentally on defendant's conduct.").

Nordisk's contention that this case involves equitable estoppel.

### Genencor Does Not Seek Equitable Estoppel

Genencor argues that the Court of Chancery improperly made detrimental reliance an element of a claim for breach of warranty. The Court of Chancery did not issue a written opinion in this case. Based on our review of the entire bench ruling, however, we conclude that the Court of Chancery did not require detrimental reliance. It followed a two-part analysis, looking first to the "language of the contract" and holding that there should be no estoppel with respect to the 2.2(a) product because "under the contract" Genencor never had any rights to the unpublished patents. Only then did the Court of Chancery consider—and reject—detrimental reliance as a second basis for relief. Indeed, as noted above, the Court of Chancery explicitly found that the omission of the sixth patent was a breach of the representation and warranty contained in paragraph 1.02 and granted estoppel with respect to the 2.2(b) product as a remedy. Genencor is not correct that the Court of Chancery made detrimental reliance an element of a claim for breach of warranty.

Novo Nordisk argues that because Genencor seeks equitable estoppel, there must be a showing of detrimental reliance. As

just explained, this argument is at odds with the actual ruling on appeal, which did not make detrimental reliance a prerequisite of relief. Nevertheless, we think that Novo Nordisk's view of this case as one involving equitable estoppel is incorrect.

■ In analyzing whether the remedy Genencor seeks is equitable estoppel, it is important to consider that Genencor is seeking to enforce a contract supported by valid consideration. Since Genencor bargained for the representation that there were only five unpublished patents, there is no need to look for detrimental reliance as a "consideration substitute." [5] We have previously observed that a promissory estoppel analysis is not applicable to cases in which the alleged promise is supported by consideration.[6] We think this observation also applies to equitable estoppel.[7] Therefore, because this is a dispute about enforcement of a bargained-for contract right, we conclude that the remedy Genencor seeks is not equitable estoppel.[8]

■ Furthermore, Novo Nordisk's argument that Genencor seeks equitable estoppel, and must therefore show detrimental reliance, fails as a matter of logic. Equitable estoppel may be defined as "a judicial remedy by which a party may be precluded by its own act or omission from asserting a right to which it *otherwise would have been entitled....* "[9] In this

---

**5.** *Lord v. Souder,* Del.Supr., 748 A.2d 393, 398 (2000).

**6.** *See id.* (stating that "promissory estoppel is more accurately viewed as a consideration substitute for promises which are reasonably relied upon, but which would not otherwise be enforceable"); *see also id.* at 404 (Lamb, V.C., concurring) (explaining that promissory estoppel analysis does not apply when the promise in question was made enforceable by a bargained-for exchange).

**7.** *See VonFeldt,* 714 A.2d at 87 (noting that equitable and promissory estoppel are "based on similar principles"); 3 Corbin on Contracts § 8.11, at 45–47 (rev. ed.1996) (explaining that equitable estoppel applies to misrepresentations of past or present fact, and that promissory estoppel extends this doctrine to

misrepresentations of "future fact or an intention regarding the future").

**8.** Genencor cites several cases for the proposition that detrimental reliance is not an element of a claim for breach of warranty. *E.g., Giuffrida v. American Family Brands, Inc.,* E.D.Pa., 1998 WL 196402, *4–6 (unpublished disposition); *Ainger v.. Michigan General Corp.,* S.D.N.Y, 476 F.Supp. 1209, 1224–25 (1979); *CBS v. Ziff–Davis Publishing Co.,* Ct. App.N.Y., 75 N.Y.2d 496, 497, 554 N.Y.S.2d 449, 553 N.E.2d 997 (1990). As discussed above, this is not what the Court of Chancery held. Therefore we do not need to address this argument.

**9.** 28 Am.Jur.2d *Estoppel and Waiver* § 28, at 453 (2000) (emphasis added).

case, however, Genencor seeks to obtain the benefit of a bargained-for promise. If Genencor bargained for the limited universe of unpublished patents, it follows that Novo Nordisk gave up its right (i.e., is not otherwise entitled) to assert the sixth unpublished patent against the 2.2(a) product.[10] Therefore, determining the scope of Novo Nordisk's rights under the contract logically precedes a determination whether Novo Nordisk is estopped as to those rights. Characterizing this as an equitable estoppel suit sidesteps the critical fact that the parties disagree about the scope of a contract right.

Instead, this lawsuit is best characterized as one seeking a declaration of the parties' rights under the contract.[11] This is how the Court of Chancery appeared to view the case. At oral argument, the Court of Chancery characterized the case as such, asking, " [I]f you would be estopped to proceed on the basis of the undisclosed patent if and when that patent issues and there's potentially an infringement product, why isn't the other side entitled to have that set of legal facts or legal rights and duties declared now?" The Court of Chancery also observed that, "[t]he issue is, simply, if declaratory relief is to be granted in this proceeding, what would be the form of estoppel that your client would be entitled to that would most faithfully carry out the parties' contractual intent?" We think that this view of the case is especially appropriate since the estoppel remedy Genencor seeks is entirely prospective. No patent right is being asserted in this lawsuit. As Genencor concedes, no infringing product has yet been developed. Therefore, there is no estoppel taking effect in this lawsuit. Genencor

seeks a declaration of its rights under the Agreement in order to avoid a patent suit down the road.

### The Court of Chancery Properly Denied the 2.2(a) Estoppel

■ The issue in this case, therefore, is whether the Court of Chancery correctly denied the estoppel remedy in favor of the 2.2(a) product. Review of the Court of Chancery's formulation and application of legal principles is plenary and requires no deference.[12] Questions of contract interpretation are subject to *de novo* review.[13] We hold that the Court of Chancery analyzed this case under correct legal principles and granted the remedy consistent with the parties' intent.

Regardless of precisely how the remedy is categorized, it should not be granted unless it protects legitimate interests. In this case, Genencor seeks to protect its expectation interest, arguing that granting the estoppel would simply enforce the limitations on Genencor's exposure for which the parties bargained.[14] The Court of Chancery held that because under paragraph 2.2(a) Genencor never had any rights to unpublished patents, the "fairest way to reflect the bargain that the parties struck is to impose an estoppel that would affect the (b) pick only." The parties join issue on the fairness of this conclusion in light of the contract.

■ The parties offer two different views of the purpose of the representation and warranty. According to Novo Nordisk, the only purpose of listing the five patents was to describe the scope of Genencor's affirmative rights under the 2.2(b)

**10.** *See Wang Laboratories v. Mitsubishi Electronics America,* Fed.Cir., 103 F.3d 1571, 1580–83 (1997) (noting that "legal estoppel," rather than equitable estoppel, applies "where a patentee has licensed or assigned a right, received consideration, and then sought to derogate from the right granted").

**11.** *See* Restatement (Second) of Contracts § 345(e) & cmt. d (1981) (noting that contract

interests may be protected by a judgment "declaring the rights of the parties").

**12.** *See Kahn v. Lynch Communication Systems, Inc.,* Del.Supr., 669 A.2d 79, 84 (1995).

**13.** *See ABB Flakt, Inc. v. National Union Fire Ins. Co.,* Del.Supr., 731 A.2d 811, 816 (1999).

**14.** *See supra* n. 3.

product. Genencor argues, however, that it looked to the representation not only for what it could do in developing the 2.2(b) product, but for what it could not do in developing the 2.2(a) product. In essence, Genencor argues that paragraph 1.02 limited the exposure of the 2.2(a) product to patent infringement suits based on unpublished patents. The sixth unpublished patent adds to the litigation risk. Therefore, argues Genencor, the omitted patent should be treated as though it did not exist. For the reasons explained below, we are not persuaded by Genencor's analysis.

We think that Novo Nordisk is correct that the parties intended the representation and warranty to define the scope of Genencor's *affirmative* rights under paragraph 2.2(b). Therefore, we find that Genencor's proposed remedy is out of proportion to any diminution of its contract rights caused by the omission of the sixth unpublished patent. The Agreement grants limited affirmative rights. It carefully delineates the rights that Genencor has under the published and unpublished patent families, and a critical aspect of the agreement is that paragraph 2.2(a), unlike paragraph 2.2(b), does not give rights to the unpublished patents. Since paragraph 2.2(a) gives no affirmative rights in unpublished patents—indeed, does not even mention them—it would be unreasonable to grant an affirmative right to the omitted patent under paragraph 2.2(a) as a matter of fulfilling the parties' expectations.

Genencor's claim that the representation in paragraph 1.02 defined its litigation risk is refuted by Genencor's ignorance of the contents of the unpublished patents at the

time of contracting.[15] The parties agree that the technology claimed by Novo Nordisk in its unpublished patent applications was known only to Novo Nordisk at the time the Agreement was entered into. In light of this fact, the limited exposure to litigation Genencor allegedly bargained for seems more notional than real. We find that the essence of 2.2(a) lies in what Genencor could do (*i.e.*, its known rights) rather than it what it could not do. Contrary to Genencor's arguments, there has been no reduction in its freedom to operate under 2.2(a); now, as before, it can develop the 2.2(a) product under the five published patents designated by the Agreement.

Furthermore, it is undisputed that Genencor knew when it entered into the Agreement that all of the unpublished patents listed in the representation and warranty would publish within eighteen months of the effective date of the Agreement. This too undermines Genencor's argument that the list of five unpublished patents defined the scope of its litigation risk. Publication completely eliminates any risk of litigation. It appears to us, therefore, that there was no litigation risk at the time the Agreement was executed because Genencor knew that within a specified time it would become aware of the contents of the unpublished patent applications. Once these patent applications were published, Genencor could avoid litigation by developing a noninfringing 2.2(a) product. The risk of litigation occurs only when Genencor intentionally infringes. Therefore, the addition of the sixth unpublished patent does not add any risks to the

15. The litigation risk aspect of Genencor's argument is illustrated by the following exchange during oral argument in the Court of Chancery:

The Court: What you're saying is that the difficulty here is not ... direct monetary damages but exposure to the risk of litigation and the possibility—not only the cost of litigation but the risk that that will put—will create a cloud on whatever intellectual property rights that your client may have?

Mr. Lehr: Yes, sir. That's precisely the issue, Your Honor. We, Genencor, accepted the risk as to the (a) molecules, as to this quantity of unpublished patent families. We bargained for that. When Novo simply proposes to add the omitted family to the list, they're proposing to add additional risks to the 2.2(a) molecule.

2.2(a) product. In this connection, we note that the omitted patent application was published on May 14, 1998, earlier than the five patents that were included in paragraph 1.02 of the Agreement. Therefore, as to that patent as well, there is no litigation risk.

Genencor argues that not granting the broader estoppel makes the representation and warranty in paragraph 1.02 "meaningless." This ignores the fact that paragraph 1.02 is the basis for the estoppel that the Court of Chancery granted. If Novo Nordisk had not warranted that the five patents were the "only" unpublished ones, then the existence of the sixth patent would not constitute a breach, and Genencor would not have any rights beyond the five patents listed. As Genencor notes in its brief, the estoppel granted in favor of the 2.2(b) product is the equivalent of a license, allowing Genencor to develop that product free of any infringement risk. In effect, therefore, the undisclosed patent has been added to the list. This is possible only because the representation and warranty implies that Genencor has access to the entire universe of unpublished protease patents. Therefore the 1.02 representation and warranty is given meaning. Granting the estoppel would make other provisions of the contract "meaningless" by adding an affirmative right to paragraph 2.2(a).

█ Finally, we believe it is telling that Genencor did not establish a record that it might have struck a different bargain had the sixth patent been disclosed.[16] In the cases cited by Genencor in which relief was granted it is clear that the remedy was fair and consistent with contractual intent.[17] The issue is not whether Genen-

cor can show detrimental reliance, but whether the remedy it seeks is designed to restore contract rights actually bargained for. In this case, the breach of the representation that there were only five unpublished patents entitles Genencor to be able to develop the 2.2(b) product without any risk of infringement from the omitted unpublished patent. It does not entitle Genencor to any relief with respect to the 2.2(a) product.

### Conclusion

We find that the additional estoppel remedy Genencor seeks in this appeal would give Genencor rights for which it did not contract. Accordingly, we affirm the judgment of the Court of Chancery granting estoppel only with respect to one of the Licensed Products.

---

**16.** In oral argument before the Court of Chancery, Genencor's counsel conceded that "there's nothing in the record that I can point to the Court to say this substantiates my argument that it's material."

**17.** *See Minnesota Mining and Manufacturing Co. v. E.I. du Pont de Nemours & Co.*, 448 F.2d 54, 58 (1971) (stating that "[i]t is *inconceivable* that DuPont would have agreed to

the terms of the agreement as written if it had been aware of the [non-disclosed patent applications]") (emphasis added). Similarly, in *Levitt v. Bouvier*, also cited by Genencor, there is a clear relationship between the estoppel remedy and the purpose of the contract provision. *See Levitt*, Del.Supr., 287 A.2d 671, 672–73 (1972).