In re UNITED COMPANIES FI-
NANCIAL CORPORATION,
et al., Debtors.

Nos. 99–450 (JCA) to 99–461(JCA).

United States Bankruptcy Court,
D. Delaware.

May 14, 2002.

Michael D. Donovan, David A. Searles, Donovan Miller, LLC, Philadelphia, PA, Neilson C. Himelein, Community Legal Aid Society, Inc., Wilmington, DE, for movants.

Marcia L. Goldstein, Brian S. Rosen, Weil, Gotshal & Manges, LLP, New York City, Mark D. Collins, Deborah E. Spivack, Richards, Layton & Finger, P.A., Wilmington, DE, for debtors and Plan Administrator.

Alan C. Gershenson, Blank, Rome, Comisky & McCauley, LLP, Philadelphia, PA, for debtors.

William H. Sudell, Derek Abbott, Morris, Nichols, Arsht & Tunnell, LLP, Wilmington, DE, Chaim J. Fortgang, Theodore Gewertz, Wachtell, Lipton, Rosen & Katz, New York City, for Official Committee of Unsecured Creditors.

## *OPINION*[1]

MARY F. WALRATH, Bankruptcy Judge.

Before the Court is a motion for class certification of a proof of claim filed by

---

1. This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052, which is made applicable to contested matters by Federal Rule of Bankruptcy Procedure 9014.

Phyllis Golson El ("the Claimant") and the Debtors' objection thereto. For the reasons set forth below, we deny the motion to certify the class.

## I. FACTUAL BACKGROUND

United Companies Financial Corporation and its affiliates (collectively "the Debtors") filed voluntary petitions under chapter 11 on March 1, 1999. All of the Debtors' assets were sold, and a liquidating plan of reorganization was confirmed on October 31, 2000.

On September 23, 1999, the Claimant filed a class proof of claim asserting a claim of $8,000,000 based on consumer claims under the federal Equal Credit Opportunity Act, 15 U.S.C. § 1691 ("ECOA"), and its interpretative regulation, Regulation B, 12 C.F.R. § 202.1, et seq. On June 29, 2000, the Debtors filed an objection to the class claim. By motion filed August 29, 2000, the Claimant sought certification of a class of all persons in the Commonwealth of Pennsylvania who, from February 2, 1996, through March 1, 1999, were extended credit by the Debtors, had an escrow for home repairs or improvements established in connection with the loan and whose principal loan amount, as reflected in the note and mortgage, exceeded the amount quoted in the home improvement work order by twenty (20) percent or more. On February 5, 2001, the Debtors objected to the class certification motion. A hearing on the Motion was held on February 13, 2001.

The Claimant bases her claim on a class action filed against the Debtors in the Eastern District of Pennsylvania on January 14, 1999. In the action, the Claimant alleged, inter alia, that the Debtors had violated ECOA when, upon receipt of a credit application for a home improvement loan, the Debtors refused to provide such a loan to the borrower but instead offered the borrower a substantially more expensive first mortgage loan without providing notification that the initial application had been denied and that the terms offered by the Debtors were a counteroffer. In essence, the Claimant asserted the Debtors received requests for loans in one amount and extended loans in a higher amount without giving proper notice under Regulation B. Claimant sought actual and punitive damages and attorney's fees and costs pursuant to section 1691e(a)–(d) of ECOA.

## II. JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B) and (O).

## III. DISCUSSION

### A. Class Actions in Bankruptcy

■ The vast majority of courts conclude that class proofs of claim are permissible in a bankruptcy proceeding.[2] See, e.g., Reid v. White Motor Corp., 886 F.2d 1462, 1469 (6th Cir.1989); In re Charter Co., 876 F.2d 866, 873 (11th Cir.1989); In re American Reserve Corp., 840 F.2d 487, 493 (7th Cir.1988); In re Zenith Laboratories, Inc., 104 B.R. 659, 662 n. 2 (D.N.J. 1989); In re Chateaugay Corp., 104 B.R. 626, 629 (S.D.N.Y.1989); In re First Interregional Equity Corp., 227 B.R. 358, 366 (Bankr.D.N.J.1998); In re Woodward & Lothrop Holdings, Inc., 205 B.R. 365, 370 (Bankr.S.D.N.Y.1997); In re Sacred

---

**2.** Under the former Bankruptcy Act the Third Circuit had held that a class proof of claim was not appropriate in a reorganization case. See SEC v. Aberdeen Sec. Co., 480 F.2d 1121, 1128 (3d Cir.1973). However, it has acknowledged that classes are now regularly certified under the Bankruptcy Code. See, e.g., In re Whittaker, 882 F.2d 791, 793 n. 1 (3d Cir.1989) (declining to review certification of class claim by lower court).

*Heart Hosp. of Norristown,* 177 B.R. 16, 22 (Bankr.E.D.Pa.1995). *But see Kahler v. Firstplus Fin., Inc. (In re FirstPlus Fin., Inc.),* 248 B.R. 60, 72 (Bankr. N.D.Tex.2000) (class proof of claim is improper in the bankruptcy context). To disallow a class claim automatically "would effectively prohibit the use of class actions in bankruptcy altogether." *Zenith Labs.,* 104 B.R. at 663.

■ Whether to certify a class claim is within the discretion of the bankruptcy court. Rule 7023 of the Federal Rules of Bankruptcy Procedure expressly allows class certification in adversary actions, by incorporating Rule 23 of the Federal Rules of Civil Procedure. Fed.R.Bankr.P. 7023. Rule 9014 expands that Rule to contested matters, at the court's discretion. "The court may at any stage in a particular matter direct that one or more of the rules in Part VII shall apply." Fed.R.Bankr.P. 9014.

### B. *Standard for Certifying a Class Action Claim*

The Supreme Court has expressed its approval of class actions, noting that "[c]lass actions serve an important function in our system of civil justice." *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 99, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981). The Third Circuit has held that class actions should be looked upon favorably. *See Eisenberg v. Gagnon,* 766 F.2d 770, 785 (3d Cir.1985).

■ In order to certify a class action, the claimant must satisfy the four elements of Rule 23(a), as well as the requirements of Rule 23(b). *See, e.g., Johnston v. HBO Film Mgmt.,* 265 F.3d 178, 183 (3d Cir.2001); *Georgine v. Amchem Prods., Inc.,* 83 F.3d 610, 624 (3d Cir.1996); *Wet-*

*zel v. Liberty Mut. Ins. Co.,* 508 F.2d 239, 248 (3d Cir.1975). The burden of proof is on the claimant to establish each element. *First Interregional,* 227 B.R. at 366; *In re Grocerland Coop.,* 32 B.R. 427, 435 (Bankr. N.D.Ill.1983). While the claimant need not prove the merits of the claim at this stage, it must provide more than bare allegations or conclusory statements to satisfy the requirements of Rule 23. *Morrison v. Booth,* 763 F.2d 1366, 1371 (11th Cir.1985).

### 1. *Arbitration Agreement*

The Debtors object to the inclusion in the class of any borrower who signed a standardized form document implemented by the Debtors as of April 29, 1996,[3] titled "Acknowledgment and Agreement to Mediate or Arbitrate" ("the Arbitration Agreement"). The Debtors assert that anyone in the purported class who signed the Arbitration Agreement must adhere to its provisions. The Debtors further assert that the Arbitration Agreement would reduce the proposed class from 1,503 claimants to 130 claimants.

The Claimant argues that the Arbitration Agreement provides for several exceptions, with one being applicable in this case:

> Notwithstanding the foregoing, this Agreement to mediate or arbitrate shall not apply with respect to either ... (iii) an application by or on behalf of the Borrower for relief under the federal Bankruptcy laws of [sic] any other similar laws of general application for the relief of debtors, through the institution of appropriate proceedings.

(Exhibit C to Debtors' Objection, p. 2). The Claimant asserts that the Arbitration

---

**3.** The Claimant's Motion seeks class certification for any claims arising between February 2, 1996, and March 1, 1999.

Agreement by its own terms excludes bankruptcy proceedings and is, therefore, inapplicable to proof of claim litigation. The Claimant asserts that the language is not limited to bankruptcy petitions filed by borrowers but refers broadly to relief sought by a borrower under the bankruptcy laws.

The Debtors assert that the clause was not intended to allow a borrower to avoid arbitration merely because the Debtors are in bankruptcy. The clause was intended to allow borrowers to file for bankruptcy without being forced to arbitrate.

■ In interpreting arbitration agreements we are guided by the notion that the Federal Arbitration Act ("FAA") was designed to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate and to place such agreements on the same footing as other contracts. *See, e.g., Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.,* 489 U.S. 468, 474, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). In applying general principles of contract interpretation to an arbitration agreement within the scope of the FAA due regard must be given to the federal policy favoring arbitration and ambiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration. *Volt Info.,* 489 U.S. at 475–76, 109 S.Ct. 1248. However, the presumption in favor of arbitration applies only where the arbitration clause is a broad one covering any differences arising with respect to interpretation of the contract, not when the arbitration clause itself is narrowly tailored. *See, e.g., Trap Rock Industries, Inc. v. Local 825, Intern. Union of Operating Engineers,* 982 F.2d 884, 888 n. 5 (3d Cir.1992).

■ In this case, while the Arbitration Agreement was broad, it explicitly provided for exceptions. The FAA "does not require parties to arbitrate when they have not agreed to do so ... nor does it prevent parties who do agree to arbitrate from excluding certain claims from the scope of their arbitration agreement." The FAA "simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Volt Info.,* 489 U.S. at 477, 109 S.Ct. 1248; *Ballay v. Legg Mason Wood Walker, Inc.,* 878 F.2d 729, 733–34 (3d Cir.1989) (exclusionary language in arbitration agreements between investors and securities broker allowed litigation in judicial forum).

■ The proper interpretation of a contract is purely a question of law. *Emmons v. Hartford Underwriters Ins. Co.,* 697 A.2d 742, 745 (Del.1997). A contract is ambiguous only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings. *ABB Flakt, Inc. v. National Union Fire Ins. Co.,* 731 A.2d 811, 816 (Del.1999). The true test is not what the parties intended, but what a reasonable person in the same position of the parties would have thought it meant. *Rhone–Poulenc,* 616 A.2d at 1196.

■ In this case, the Arbitration Agreement does not require arbitration when there has been an "application ... of the Borrower for relief under the federal Bankruptcy laws." The Debtors assert that the language merely covers a borrower's filing of a bankruptcy petition. The Claimant asserts and we agree that the Arbitration Agreement is not limited to that situation. A reasonable person such as a borrower could interpret an application for relief to refer to a number of situations, *i.e.,* relief from the automatic stay, filing a proof of claim. In addition, a reasonable person, not a reasonable bankruptcy professional, would not interpret

the clause to exclude the situation where the Debtors are in bankruptcy.

■ Furthermore, the Debtors drafted the Arbitration Agreement. Therefore, any ambiguity must be decided against them. *See, e.g., Barco Urban Renewal Corp. v. Housing Authority of Atlantic City,* 674 F.2d 1001, 1010 (3d Cir.1982); *Goodman v. Continental Cas. Co.,* 347 A.2d 662, 665 (Del.Super.Ct.1975); Restatement (Second) of Contracts § 206 (2002) ("In choosing among the reasonable meanings of a promise or agreement or a term thereof, that meaning is generally preferred which operates against the party who supplies the words or from whom a writing otherwise proceeds"). As sophisticated lenders that drafted the standardized form executed by many of the class members, the Debtors could have drafted the exception to the Arbitration Agreement to exclude the Debtors' own bankruptcy proceedings. It failed to do so. Thus, we conclude that the Arbitration Agreement as drafted does not require arbitration in these circumstances.

### 2. *Rule 23(a)*

Rule 23(a) states:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). Thus, Rule 23(a) requires a showing of: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *See, e.g., Amchem Prods., Inc. v. Windsor,* 521 U.S.

591, 613, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); *Johnston,* 265 F.3d at 183.

#### a. *Numerosity*

■ The requirement of numerosity does not require that joinder be impossible but instead dictates that joinder of all the parties is impracticable when the procedure would be "inefficient, costly, time-consuming, and probably confusing." *Ardrey v. Federal Kemper Ins. Co.,* 142 F.R.D. 105, 111 (E.D.Pa.1992). A court may make "common sense assumptions" in order to support the finding of numerosity. *Snider v. Upjohn Co.,* 115 F.R.D. 536, 539 (E.D.Pa.1987) (*quoting Wolgin v. Magic Marker Corp.,* 82 F.R.D. 168, 171 (E.D.Pa. 1979)).

■ Claimant alleges, based on public information and exhibits in the trial record in *Newton v. United Companies Financial Corp.,* 24 F.Supp.2d 444 (E.D.Pa. 1998), that there are 1,503 members of the proposed class of Pennsylvania borrowers. While it would not be impossible to adjudicate each claim separately, class certification offers the benefit of adjudicating common issues once. The numerosity requirement has been met in this case.

#### b. *Commonality*

■ Rule 23(a)(2) requires a showing of the existence of "questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). This "threshold of commonality is not high." *In re School Asbestos Litig.,* 789 F.2d 996, 1010 (3d Cir.1986). All class members need not share identical claims; "factual differences among the claims of the putative class members do not defeat certification." *Baby Neal v. Casey,* 43 F.3d 48, 56 (3d Cir.1994). "The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Id.* at 56; *Krell v.*

*Prudential Ins. Co. of Am. (In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions)*, 148 F.3d 283, 310 (3d Cir. 1998).

■ In this case the Claimant asserts that all members of the class were damaged by the illegal practices of the Debtors. The Claimant asserts that each member of the class is a victim of the Debtors' failure to give notice that the initial application for a home improvement loan had been denied and that its offer of credit was actually a counteroffer. Thus, at least one common issue is extant. This satisfies the threshold issue of whether the claims share common questions of law or fact.

### c. Typicality

■ The typicality requirement of Rule 23(a)(3) and the adequacy of representation requirement in Rule 23(a)(4) are designed to assure that the interests of the unnamed class members will be adequately protected by the named class members. *See, e.g., General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 449 (3d Cir. 1977).

■ Rule 23(a)(3) requires that "the claims or defenses of the class representative parties be typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). Typicality entails an inquiry into whether "the named plaintiff's individual circumstances are markedly different or . . . the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based." *Weiss v. York Hosp.*, 745 F.2d 786, 810 (3d Cir.1984); *Eisenberg*, 766 F.2d at 786. "The typicality requirement is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." *Prudential*, 148 F.3d at 311; *see also Baby Neal*, 43 F.3d at 57. Much like commonality, the typicality requirement does not mandate that all class members share identical claims. *See Baby Neal*, 43 F.3d at 56.

■ The Claimant alleges that the claims and defenses she advocates for herself are similar to the claims of the class members and that they are typical victims of the Debtors' improper practices, namely the failure to provide a written ECOA notice of adverse action. The Claimant asserts she will present the same evidence (based on the same legal theories) to support her claim as will be presented on the claims of other class members.

The Debtors assert that the Claimant is not a proper class representative. The Claimant's allegations are based on an argument that borrowers requested one loan amount for home improvements and instead received a consolidation loan for a higher amount. Thus, the Debtors assert the central issue is what was discussed between the borrower and the Debtors. The Claimant is not a borrower but instead is a co-signer on a loan made to her grandmother. The Debtors assert that the Claimant did not have any discussions with anyone concerning the type of loan that her grandmother wanted in the first place.

■ However, we do not find this distinction relevant. Factual differences of the Claimant and the class members will not defeat typicality. *See, e.g., Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912, 923 (3rd Cir.1992). The claims of the Claimant and the class members arise out of the same course of conduct and share the same legal theory. The focus of all the claims is whether the Debtors failed to give proper notice under ECOA, not

whether the Claimant is a co-signer on the loan to her grandmother.

### d. *Adequacy of Representation*

■ Rule 23(a)(4) requires that "the representative party will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). A class has adequate representation if (1) counsel for the named plaintiffs is qualified, experienced, and generally able to conduct the suit, and (2) the class representative's interests are not antagonistic to those of the unnamed members of the class. *See, e.g., Prudential,* 148 F.3d at 312; *Lewis v. Curtis,* 671 F.2d 779, 788 (3d Cir.1982); *First Interregional,* 227 B.R. at 368–69.

■ Counsel for the Claimant has been shown to be anything but inadequate. Counsel is experienced in litigating these sorts of consumer actions and as such will promote the interests of the class representative. Additionally, the Claimant has no conflict of interest that would negate her representation of the entire class. The Claimant and class members have similar interests in establishing that the Debtors' practices with regard to home improvement financing requests violated ECOA. Therefore, we conclude that the Claimant will adequately represent the class.

### 3. *Rule 23(b)*

■ Once an action satisfies the prerequisites of Rule 23(a), the Claimant must establish it meets one of the three elements of Rule 23(b). In this case, the Claimant seek certification of the class claim under Rule 23(b)(3), which states:

An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

.  .  .  .  .

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management. of a class action.

Fed.R.Civ.P. 23(b)(3).

### a. *Questions of Law and Fact Predominate*

■ The purpose of requiring common questions of law or fact to predominate is to ensure that the class is sufficiently cohesive to warrant adjudication by representation. *See Amchem,* 521 U.S. at 623, 117 S.Ct. 2231; *In re LifeUSA Holding Inc.,* 242 F.3d 136, 144 (3d Cir.2001). The predominance analysis under Rule 23(b)(3) is much more demanding than the general commonality test under Rule 23(a)(2). *See Amchem,* 521 U.S. at 624, 117 S.Ct. 2231; *LifeUSA Holding,* 242 F.3d at 144; *Jackson v. Motel 6 Multipurpose, Inc.,* 130 F.3d 999, 1005 (11th Cir.1997).

In this case, the Claimant alleges common issues of fact and law. The Claimant asserts that the common issues of fact are that the Debtors had a uniform practice of accepting requests for financing made by consumers indirectly through home improvement contractors and then offering only a larger, consolidation loan, without

giving consumers written notice, as required under ECOA, of the counteroffer and the reasons for denying the initial request. The Claimant asserts that the legal issues are the same: whether requests made by consumers through home improvement contractors are credit applications, when the application is considered complete for purposes of ECOA, and when the statute requires the Debtors to notify class members of action on their application.

The Debtors assert, however, that class certification should be denied since individual questions of fact predominate over common questions. We agree. An examination of the merits of the case leads us to the conclusion that class certification in this case is inappropriate. *See, e.g., Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 171–72 (3d Cir. 2001) (to determine whether the claims alleged by a putative class meet the requirements for class certification under Rule 23(b)(3), a court must first examine the underlying cause of action).

First, the Debtors assert that the proposed class as defined necessitates an individualized factual inquiry of every class member. The Claimant defines the class as all persons

> who had an escrow for home repairs or improvements established in connection with the loan and whose principal loan amount, as reflected in the note and mortgage, exceeded the amount quoted in the home improvement work order by twenty (20) percent or more.

(Claimant Motion, p. 1). The Debtors assert that the amount of credit requested by a borrower can depend on oral conversations with a lender and other written documents in a loan file besides a home improvement work order. *See, e.g., United Companies*, 24 F.Supp.2d at 457 (court found that the borrowers or their repre-

sentatives did not fill out a written application but instead made an initial request and then the lender filled out a written application).

As such it is very likely that in any particular case there were both written and oral discussions between the borrower and the lender regarding the amount of the loan requested. Different facts could be relevant, including whether the borrower sought to refinance a first mortgage or to consolidate all its outstanding credit card debts in addition to obtaining home improvement financing. Thus, in order to determine how much financing each class member originally requested we would need to examine the home improvement work order and any contemporaneous oral discussions or written communications about the requested loan amount. Such an individualized inquiry renders class certification inappropriate.

ECOA provides that a counteroffer can be either oral or in writing. *See, e.g., Diaz v. Virginia Hous. Dev. Auth.*, 117 F.Supp.2d 500, 504 (E.D.Va.2000) (ECOA does not require written notification of a counteroffer). The Federal Reserve Board's Official Commentary contemplates that some notices may be given orally. 12 C.F.R. Pt. 202, Supp. I, Staff Commentary, § 202.9(3) ("Notification occurs when a creditor delivers or mails a notice to the applicant's last known address or, *in the case of an oral notification*, when the creditor communicates the credit decision to the applicant") (emphasis added).

Since counteroffers under ECOA may be either written or oral, we would have to determine in each case whether the Debtors gave the borrower oral or written notice of the counteroffer. The individualized interaction between the class members and the Debtors, whether written or oral, renders class treatment inappropriate. We conclude that individual factual

and legal issues predominate over common questions concerning the Debtors' alleged course of conduct and its unlawfulness.

### b. Class Action as Superior Method to Resolve Controversy

 The second part of Rule 23(b) requires a finding that the "class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b). Within this requirement a court should consider "the difficulties likely to be encountered in the management of a class action." Fed. R.Civ.P. 23(b)(3)(D); *Johnston,* 265 F.3d at 194.

Here, the Claimant alleges that this case is straightforward and would present no manageability issues. We disagree. This case has so many individualized issues that adjudication on a class basis would be inefficient and unmanageable. Although the numerosity requirement has been met, an adjudication of the claims of 1,503 class members in one proceeding creates insurmountable manageability issues. We would need to schedule countless minitrials to determine whether there is liability under ECOA with respect to each class member. This would provide no advantage over simply dealing with the claims in the ordinary course of claims litigation. Thus, we cannot conclude that a class claim in this case is a superior method.

### IV. CONCLUSION

We conclude that although the Claimant has satisfied the requirements of Rule 23(a), she cannot meet the requirements of Rule 23(b)(3) and we will deny certification of the class.

An appropriate Order is attached.

### ORDER

AND NOW, this **14TH** day of **MAY, 2002,** upon consideration of the motion for class certification of a proof of claim filed by Phyllis Golson El and the Debtors' objection to certification of the class proof of claim, and after a hearing, for the reasons set forth in the accompanying Opinion, it is hereby

**ORDERED** that the motion for class certification is hereby **DENIED.**