**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | |
|---|---|
| ARCLIGHT CAPITAL PARTNERS, LLC; ARCLIGHT ENERGY PARTNERS FUND VI, L.P.; and LIMETREE BAY HOLDINGS, LLC, <br><br> Plaintiffs, <br><br> and <br><br> FREEPOINT COMMODITIES LLC, <br><br> Plaintiff-Intervenor, <br> v. <br><br> LEXINGTON INSURANCE CO., <br><br> Defendant. | C.A. No. N24C-11-227 PRW <br> CCLD |

Submitted: February 24, 2026
Decided: May 18, 2026

*Upon The ArcLight Entities'*
*Motion for Partial Summary Judgment*
*on Coverage for Pre-Tender Defense Costs,*
**DENIED.**

*Upon Plaintiff-Intervenor Freepoint Commodities LLC's*
*Motion for Partial Summary Judgment*
*on Issue of Coverage for "Pre-Tender" Defense Costs,*
**DENIED.**

*Upon Defendant Lexington Insurance Company's*
*Cross-Motion for Partial Summary Judgment*
*Regarding Pre-Tender Defense Costs*
**GRANTED.**

<u>**MEMORANDUM OPINION AND ORDER**</u>

Jennifer C. Wasson, Esquire, and Ryan D. Kingshill, Esquire, POTTER ANDERSON & CORROON LLP, Wilmington, Delaware; Robin L. Cohen, Esquire, Alexander M. Sugzda, Esquire, and W. Alex Harris, Esquire, COHEN ZIFFER FRENCHMAN & MCKENNA LLP, New York, New York, *Attorneys for Plaintiffs ArcLight Capital Partners, LLC, ArcLight Energy Partners Fund VI, L.P., and Limetree Bay Holdings, LLC.*

R. Eric Hacker, Esquire, MORRIS JAMES LLP, Wilmington, Delaware; Eric M. Gold, Esquire, and Lauren N. Smith, Esquire, PILLSBURY WINTHROP SHAW PITTMAN LLP, Washington, District of Columbia, *Attorneys for Plaintiff-Intervenor Freepoint Commodities LLC.*

Kurt M. Heyman, Esquire, Aaron M. Nelson, Esquire, Denise S. Kraft, Esquire, and Luke P. Edwards, Esquire, HEYMAN ENERIO GATTUSO & HIRZEL LLP, Wilmington, Delaware; Kendall J. Burr, Esquire, and Jay Patterson, Esquire, MCDOWELL HETHERINGTON LLP, Houston, Texas, *Attorneys for Defendant Lexington Insurance Company.*

**WALLACE, J.**

This case involves an insurance coverage dispute flowing from an oil refinery and storage terminal in the U.S. Virgin Islands ("USVI").[1] The coverage concerns class-action lawsuits relating to pollution from the Refinery. The parties dispute whether the Insurer owes pre-tender defense costs outlaid by the Insureds before the Insurer was notified of the underlying lawsuits covered by the policy. The insurance policy at issue is Contractors Pollution Liability Policy No. CPO 20726893 ("Policy").[2]

The parties have competing cross-motions for summary judgment on the issue of pre-tender costs that predate notice to the Insurer. As well, the Insurer moves for summary judgment on the Policy's coverage of Plaintiff ArcLight Capital Partners, LLC ("ACP").

For the foregoing reasons, the Court **GRANTS** the Insurer's Cross-Motion for Partial Summary Judgment on pre-tender costs and ArcLight Capital Partners, LLC's coverage. As a result, Plaintiffs' and Intervenor-Plaintiff's Motions for Partial Summary Judgment are **DENIED**.

---

[1] *See generally* The ArcLight Entities' Br. in Supp. of their Mot. for Partial Summ. J. on Coverage for Pre-Tender Defense Costs at 4 (D.I. 68) [hereinafter "ArcLight Op. Br."]. For simplicity's sake, the Court will refer to the facilities as "the Refinery" and "the Terminal."

[2] *See* Combined Answering Br. in Opp'n to the ArcLight Pls.' Mot. for Partial Summ. J. and Op. Br. in Supp. of Def. Lexington Insurance Company's Cross-Motion for Partial Summ. J. Regarding Pre-Tender Defense Costs at 7 (D.I. 72) [hereinafter "Lexington ArcLight Br."]; Aff. of Beverly McCurry in Supp. of Lexington Insurance Company's Answer to Pl.-Intervenor Freepoint Commodities, LLC's Partial Mot. for Summ. J. Regarding Pre-Tender Defense Costs ¶ 7 [hereinafter "McCurry Aff."] (D.I. 73).

# I. BACKGROUND[3]

## A. THE PARTIES

ACP is a Delaware limited liability company with its principal place of business in Massachusetts.[4] Plaintiff ArcLight Energy Partners Fund VI, L.P. ("Fund VI") is a Delaware limited partnership with its principal place of business in Massachusetts.[5] Plaintiff Limetree Bay Holdings, LLC ("LBH") is a Delaware limited liability company with its principal place of business in Massachusetts.[6]

Plaintiff-Intervenor Freepoint Commodities LLC ("Freepoint") is a Delaware limited liability company with its principal place of business in Connecticut.[7]

Defendant Lexington Insurance Company ("Lexington") is a Delaware corporation with its principal place of business in Massachusetts.[8]

## B. POLICY BACKGROUND AND UNDERLYING ACTIONS

In 2016, LBH—a holding company owned in part by Fund VI—and

---

[3]  The Court draws the following facts from the undisputed facts in the pleadings and evidence attached to the parties' summary judgment affidavits.

[4]  Compl. in Intervention and Demand for a Jury Trial ¶ 8 (D.I. 28) [hereinafter "Freepoint Compl."]; Def. Lexington Insurance Company's Answer and Affirmative Defenses to Compl. in Intervention ¶ 8 (D.I. 42) [hereinafter "Freepoint Answer"].

[5]  Freepoint Compl., ¶ 9; Freepoint Answer ¶ 9.

[6]  Freepoint Compl., ¶ 10; Freepoint Answer ¶ 10.

[7]  Freepoint Compl., ¶ 7; Freepoint Answer ¶ 7.

[8]  Freepoint Compl., ¶ 11; Freepoint Answer ¶ 11.

another indirect equity investor purchased the terminal storage assets in Limetree Bay and the then-dormant Refinery out of bankruptcy.[9] After some time owning and operating the Terminal, the indirect equity owners established the entity Limetree Bay Refining, LLC ("LBR"), which worked to restart the Refinery's operations.[10]

Beginning in 2021, several classes of plaintiffs sued over pollution arising from the Refinery's restart.[11] Initially, ACP was the only ArcLight Entity named in the suits.[12] And ACP paid around $1.6 million in fees and expenses between May 2021 and December 2022.[13] Later, Fund VI and LBH became defendants to separate suits in January 2023 and February 2023, respectively.[14] Eventually, the lawsuits were consolidated in March 2024 into the Consolidated Class Action.[15]

The class plaintiffs named Fund VI, LBH, and ACP (hereinafter the

[9] Affidavit of Jeanna T. Simeone in Supp. of the ArcLight Entities' Mot. for Partial Summ. J. on Coverage for Pre-Tender Defense Costs ¶¶ 4–6 (D.I. 68) [hereinafter "Simeone Aff."].

[10] Simeone Aff., ¶ 8.

[11] *See* Aff. of Alexander M. Sugzda in Supp. of the ArcLight Entities' Mot. for Partial Summ. J. on Coverage for Pre-Tender Defense Costs ¶¶ 7–12 (D.I. 68) [hereinafter "Sugzda Aff."]; McCurry Aff., ¶ 3.

[12] Aff. of Kendall J. Burr in Supp. of Lexington Insurance Company's Answer to Pl.-Intervenor Freepoint Commodities, LLC's Mot. for Summ. J. and Cross-Mot. for Partial Summ. J. Regarding Pre-Tender Defense Costs ¶ 10 (D.I. 73) [hereinafter "Burr Aff."].

[13] Burr Aff., ¶ 15.

[14] Sugzda Aff., Ex. B. and Ex. C.

[15] Sugzda Aff., ¶ 8.

"ArcLight Entities") as defendants, and alleged that they "haphazardly restarted" refining operations without implementing "critically necessary improvements and repairs" or exercising "proper management or safe operations" of the facility.[16] The class plaintiffs also named Freepoint—an indirect investor in the project—as a defendant.[17] Freepoint retained the international law firm of Hogan Lovells to defend the lawsuits and billed roughly $772,488.88 in fees and expenses between May 2021 and December 2023.[18]

After incurring $2.5 million in defense costs, the ArcLight Entities learned of the Policy through counsel.[19]

## C. NOTICE TO LEXINGTON

On January 11, 2022, LBR's counsel, Baker & Hostetler LLP, sent a letter concerning the underlying lawsuits to Lexington.[20] That letter identified LBR as the Insured and attached the complaints to each of the underlying lawsuits, which named Freepoint as a defendant[.]"[21] Lexington acknowledged LBR's notice on

---

[16] Sugzda Aff., Ex. D ¶¶ 4, 6, 8, 96–99 (D.I. 68) [hereinafter "Consol. Compl."].

[17] *See* Consol. Compl. at 1.

[18] Burr Aff., ¶ 18.

[19] Simeone Aff., ¶ 11.

[20] Aff. of Lauren N. Smith in Supp. of Pl.-Intervenor Freepoint Commodities LLC's Mot. for Partial Summ. J. on Issue of Coverage for "Pre-Tender" Defense Costs [hereinafter "Smith Aff."] Ex. B (D.I. 69) [hereinafter "Notice of Claim"].

[21] Notice of Claim.

January 28, 2022.[22] On May 6, 2022, Lexington responded with a Reservation of Rights letter that detailed each of the underlying suits and named the Policy's Insureds.[23] After agreeing to defend the underlying lawsuits, Lexington noted that it "first received notice of the potential claims against Terminals by email and letter dated January 11, 2022.[24] And on February 24, 2023, counsel for Limetree Bay Terminals, LLC, ("LBT"), sent a letter to Lexington requesting to know its position on coverage and attached the amended complaints listing LBH and Fund VI as defendants.[25]

On January 8, 2024, Freepoint sent a letter to Lexington via its counsel Hogan Lovells US LLP and Moore, Dodson, Russell & Wilhite, P.C. to confirm coverage.[26] Upon learning of the Policy and Lexington's defense of LBT, Fund VI sent a letter to Lexington on January 25, 2024, to confirm that Lexington would defend it as well.[27]

### D. POLICY COVERAGE

Lexington issued the Policy to LBR, effective September 25, 2018.[28] LBR,

---

[22] Smith Aff., Ex. C.

[23] Smith Aff., Ex. D.

[24] *Id.*, Ex. F at 16.

[25] Sugzda Aff., Exs. B, C, and G (D.I. 68).

[26] Smith Aff., ¶ 10 and Ex. G.

[27] Simeone Aff., ¶ 14.

[28] Sugzda Aff., Ex. A § VI. Definitions, Policy Period, as amended by Endorsement No. 7

LBH, Freepoint, and Fund VI are insured under the Policy.[29] The Policy provides coverage for **Loss**:

> The Company will pay on behalf of the **Insured** all sums that the **Insured** shall become legally obligated to pay as **Loss** as a result of **Claims** for **Bodily Injury**, **Property Damage** or **Environmental Damage** resulting from **Pollution Conditions** caused by **Covered Operations**. The **Pollution Conditions** must be unexpected and unintended from the standpoint of the **Insured**. The **Bodily Injury**, **Property Damage**, or **Environmental Damage** must occur during the **Policy Period**.[30]

The Policy also states that "[w]hen a **Claim** is made against the **Insured**" to which the Policy applies, Lexington "has the right to defend, including, but not limited to, the right to appoint counsel and the duty to defend such **Claim**."[31]

Included in the **Loss** definition are **Claim Expenses**.[32] And **Claim Expenses** are "[f]ees charged by any lawyer designated by [Lexington]" and "[a]ll other fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a **Claim**, if authorized by [Lexington]."[33]

Section III identifies the Insured's duties when there is a **Claim** and says

---

(D.I. 68) [hereinafter "Policy"].

[29] Policy § VI. Definitions and Policy Endorsement. No. 3; McCurry Aff., ¶ 4.

[30] Policy § I. 1; McCurry Aff., ¶ 5.

[31] *Id.* § I. 2. – "Defense," as amended by End. 8; McCurry Aff., ¶ 7.

[32] *Id.* § VI. T; McCurry Aff., ¶ 6.

[33] *Id.* § VI. D.

that, as a "condition precedent" to the right of coverage provided by the Policy, the Insured must:

1) "give notice as soon as practicable to [Lexington]";

2) "forward the following to [Lexington] as soon as practicable after receipt" various materials including court pleadings, "technical reports, laboratory data, field notes," "expert reports, investigations, and data collected by experts," and "[a]ny other information developed or discovered by the Insured concerning the Claim"; and

3) cooperate with Lexington to "the fullest extent possible by providing assistance necessary to adjust, investigate, and defend the claim."[34]

Also, the Insured cannot "except at such Insured's own cost, voluntarily make any payment, assume any obligation, or incur any expense . . . without [Lexington's] prior written consent."[35]

### E. THE COURT HOLDS THAT LEXINGTON HAS A DUTY TO DEFEND FUND VI, LBH, AND FREEPOINT.

Earlier in this litigation, ACP, Fund VI, LBH, and Freepoint moved for partial summary judgment on the issue of Lexington's duty to defend.[36] The Court held a hearing on the motions and granted the motions as to Fund VI, LBH, and Freepoint.[37] The Court denied the motion as to ACP because ACP had not

---

[34] *Id.* § III. A.

[35] *Id.* § V. Q.

[36] Plaintiffs' Motion for Partial Summary Judgment on AIG's Duty to Defend (D.I. 7); Plaintiff-Intervenor Freepoint Commodities LLC's Motion for Partial Summary Judgment on AIG's Duty to Defend (D.I. 29).

[37] D.I. 46.

"demonstrated at this stage that it is insured under the Policy."[38]

## II. PARTIES' CONTENTIONS

The ArcLight Entities and Freepoint move for partial summary judgment on the issue of Lexington's duty to pay pre-tender defense costs.[39] They argue that Lexington must show prejudice to avoid paying these costs pursuant to *Solera Holdings, Inc. v. XL Spec. Ins. Co.*,[40] which they posit is clear precedent that Delaware requires a prejudice showing in this scenario.[41] Further, they argue that Lexington cannot show prejudice.[42]

Lexington responds in virtually the same manner to ArcLight and Freepoint; Lexington contends ACP isn't insured under the Policy.[43]

In short, Lexington insists that pre-tender costs aren't reimbursable under Delaware law and there's no prejudice element in this analysis.[44] To Lexington, *Solera* is an outlier, and *Home Insurance Company v. American Insurance*

---

[38] Order on Plaintiffs and Plaintiff-Intervenor's Motions for Partial Summary Judgment (D.I. 48).

[39] *See generally* ArcLight Op. Br. at 15–23; Freepoint Op. Br. at 13–25.

[40] 213 A.3d 1249 (Del. Super. Ct. 2019), *reversed on other grounds,* 240 A.3d 1121 (Del. 2020).

[41] Arclight Op. Br. at 17; Freepoint Op. Br. at 14–15.

[42] ArcLight Op. Br. at 17–22; Freepoint Op. Br. at 19–25.

[43] Lexington ArcLight Br. at 20–22.

[44] *Id.* at 22–30.

*Group*[45] is the correct case on this issue.[46]  Alternatively, Lexington says that if the Court determines that a prejudice requirement exists under Delaware law, there is a conflict of laws, and the Court should apply USVI law to this issue.[47] Finally, Lexington submits that summary judgment is inappropriate if there is a prejudice requirement since that is a factually-intensive matter for trial.[48]

In reply, Freepoint reiterates that: (1) Lexington has to show prejudice to avoid paying pre-tender defense costs; (2) there is no conflict of law between Delaware and USVI law; and (3) in any event, Lexington cannot show prejudice.[49]  As well, the ArcLight Entities maintain that: (1) Lexington cannot show any prejudice to lack of notice or consent; (2) Lexington cannot move for summary judgment against ACP since this goes beyond the scope of the ArcLight Entities' motion for partial summary judgment; and (3) Lexington has waived any argument to avoid paying for pre-tender costs because this was not raised in its initial resistance to coverage.[50]

---

[45]  2003 WL 22683008, at *4–5 (Del. Super. Ct. Oct. 30, 2003).

[46]  Lexington ArcLight Br. at 23–30.

[47]  *Id.* at 30–35.

[48]  *Id.* at 35–39.

[49]  *See generally* Plaintiff-Intervenor Freepoint Commodities LLC's Answering Brief in Opposition to Defendant Lexington Insurance Company's Cross-Motion for Partial Summary Judgment Regarding Pre-Tender Defense Costs at 2–27 (D.I. 79).

[50]  *See generally* The ArcLight Entities' Opposition to Defendant Lexington Insurance Company's Cross-Motion for Partial Summary Judgment Regarding Pre-Tender Defense Costs at 11–31 (D.I. 80).

Lexington continues to submit that: (1) USVI law would apply if there was a conflict, and USVI law would conflict if the Court finds that Delaware law requires a prejudice showing; and (2) even if the Court decides to require a prejudice analysis, summary judgment should be denied as this is an issue for trial.[51] Too, Lexington attests that Fund VI and LBH cannot recover defense costs incurred before they were sued by non-insured ACP and it has not waived any right to rely on policy terms.[52]

Lastly, the ArcLight Entities hold fast to the arguments made in their prior briefing.[53] And Freepoint says that it complied with all the conditions precedent under the Policy, and Lexington didn't suffer any prejudice.[54]

## III. STANDARDS OF REVIEW

### A. SUMMARY JUDGMENT

This Court can grant a moving party's motion for summary judgment

---

[51] *See generally* Defendant Lexington Insurance Company's Reply Brief in Support of Cross-Motion Against Plaintiff-Intervenor Freepoint Commodities LLC for Partial Summary Judgment Regarding Pre-Tender Defense Costs at 4–23 (D.I. 89).

[52] Defendant Lexington Insurance Company's Reply Brief in Support of Cross-Motion Against ArcLight Entity Plaintiffs for Partial Summary Judgment Regarding Pre-Tender Defense Costs at 4–7, 21–22 (D.I. 91).

[53] *See generally* The ArcLight Entities' Reply in Support of their Motion for Partial Summary Judgment on Coverage for Pre-Tender Defense Costs at 1–5 (D.I. 90) [hereinafter "ArcLight Reply"].

[54] *See generally* Plaintiff-Intervenor Freepoint Commodities LLC's Reply Brief in Support of its Motion for Partial Summary Judgment on Issue of Coverage for "Pre-Tender" Defense Costs at 1–12 (D.I. 92).

under Delaware Superior Court Rule 56 only when no genuine issue of material fact exists, and the party is entitled to judgment as a matter of law.[55] Summary judgment "will not be granted if there is a material fact in dispute"[56] or if "it seems desirable to inquire thoroughly into [the facts] to clarify the application of the law to the circumstances."[57] The moving party has the burden of demonstrating "its claim is supported by undisputed facts."[58] If the moving party meets its burden, the burden shifts to the non-moving party to show there is a "genuine issue for trial."[59] In determining whether such a genuine issue exists, "the Court must view the facts in the light most favorable to that non-moving party."[60] "Lastly, the Court accepts as true the parties' factual stipulations."[61]

"While the Court may not be able to grant summary judgment 'if the

---

[55] Del. Super. Ct. Civ. R. 56; *Options Clearing Corp. v. U.S. Specialty Ins. Co.*, 2021 WL 5577251, at *7 (Del. Super. Ct. Nov. 30, 2021); *Motors Liquid. Co. DIP Lenders Tr. v. Allianz Ins. Co.*, 2017 WL 2495417, at *5 (Del. Super. Ct. June 19, 2017).

[56] *Radulski v. Liberty Mut. Fire Ins. Co.*, 2020 WL 8676027, at *3 (Del. Super. Ct. Oct. 28, 2020); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").

[57] *Ebersole v. Lowengrub*, 180 A.2d 467, 468–69 (Del. 1962).

[58] *Radulski*, 2020 WL 8676027, at *3 (citing *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979)).

[59] Del. Super. Ct. Civ. R. 56(e); *CNH Indus. Am. LLC v. Am. Casualty Co. of Reading*, 2015 WL 3863225, at *1 (Del. Super. Ct. June 8, 2015) ("If the motion is properly supported, then the burden shifts to the non-moving party to demonstrate that there are material issues of fact for resolution by the ultimate fact-finder.").

[60] *Radulski*, 2020 WL 8676027, at *3 (citing *Judah v. Del. Tr. Co.*, 378 A.2d 624, 632 (Del. 1977)).

[61] *Id.*

- 11 -

factual record has not been developed thoroughly enough to allow the Court to apply the law to the factual record,'"[62] "a matter should be disposed of by summary judgment whenever an issue of law is involved and a trial is unnecessary."[63] "[W]hen an ultimate fact to be determined is one of motive, intention or other subjective matter, summary judgment is ordinarily inappropriate."[64] Without doubt, summary judgment is encouraged, but there is no "right" to summary judgment.[65]

## B. CONFLICT OF LAWS

Delaware follows a three-part test to determine the choice of law.[66] Under this test, courts: (1) determine whether the parties made an effective choice of law through their contract; (2) if not, determine whether there is an actual conflict between the laws of the states each party urges should apply; and (3) if so, analyze which state has the most significant relationship to the claims.[67] For the most

---

[62] *Id.* at *4 (quoting *CNH Indus. Am.*, 2015 WL 3863225, at *1).

[63] *Jeffries v. Kent Cty. Vocational Tech. Sch. Dist. Bd. of Educ.*, 743 A.2d 675, 677 (Del. Super. Ct. 1999); *Brooke v. Elihu-Evans*, 1996 WL 659491, at *2 (Del. Aug. 23, 1996).

[64] *Humanigen, Inc. v. Savant Neglected Diseases, LLC*, 2021 WL 4344172, at *21 (Del. Super. Ct. Sept. 23, 2021) (quoting *LVI Gp. Invs., LLC v. NCM Gp. Hldgs., LLC*, 2019 WL 7369198, at *22 (Del. Ch. Dec. 31, 2019)).

[65] *US Dominion, Inc. v. Fox News Network, LLC*, 293 A.3d 1002, 1034 (Del. Super. Ct. 2023) (quoting *Telxon Corp. v. Meyerson*, 802 A.2d 257, 262 (Del. 2002) (internal quotation marks and citation omitted)).

[66] *Stillwater Mining Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa*, 289 A.3d 1274, 1283 (Del. 2023).

[67] *Id.*

significant relationship aspect of this test, Delaware looks to the Restatement (Second) of Conflict of Laws.[68] The factors considered under the Restatement are: (a) the place of contracting; (b) the place of negotiation of the contract; (c) the place of performance; (d) the location of the subject matter of the contract; and (e) the domicile, residence, nationality, place of incorporation, and place of business of the parties.[69] And the Restatement presumes that the law of the state which the parties understood was to be the principal location of the insured risk applies to insurance policies.[70]

## IV. DISCUSSION

The Court first addresses whether Lexington waived its right to argue that it isn't liable for pre-tender costs by not raising the issue in the previous motions for partial summary judgment concerning Lexington's duty to defend. The Court finds that Lexington didn't waive this argument because the first motions didn't encompass this issue.

Turning to the merits of the motions, the Court addresses whether the Policy covers pre-tender costs incurred before Lexington was notified. Since the

---

[68] *Certain Underwriters at Lloyds, London v. Chemtura Corp.*, 160 A.3d 457, 465 (Del. 2017).

[69] RESTATEMENT (SECOND) OF CONFLICT OF LAWS [hereinafter "Restatement"] § 188 (A.L.I. 1971).

[70] *Chemtura*, 160 A.3d at 465.

- 13 -

Policy doesn't have a choice-of-law provision, the Court must compare the laws of Delaware and the USVI to determine whether there is a conflict between the jurisdictions. Under Delaware law, Lexington must demonstrate that the lack of notice and lack of consent prejudiced Lexington to excuse Lexington from paying pre-tender costs. But there is a conflict between USVI law and Delaware law because no caselaw suggests that USVI courts would adopt that minority view requiring such showing of prejudice. If anything, there is caselaw suggesting that USVI courts would adopt the majority view that insurers aren't liable for pre-tender costs. And, no doubt, USVI has a more significant relationship since that is the location of the insured risk. Thus, since USVI law applies to this issue, Lexington isn't liable for pre-tender costs and need not show prejudice.

While it could not definitively do so earlier, the Court now confirms that the Policy doesn't cover ACP. The reason is that the Policy doesn't list ACP as an insured, and ACP has failed to demonstrate that it can prove it is covered. So, ACP isn't entitled to any pre-tender costs.

Lastly, the Court determines the dates of tender relating to costs. Only Freepoint and Fund VI properly requested coverage and cannot recover costs spent before those dates. LBH never requested coverage and isn't entitled to any costs.

## A. LEXINGTON DID NOT WAIVE ITS RIGHT TO ASSERT THAT IT IS NOT LIABLE FOR PRE-TENDER COSTS.

If a party seeks summary judgment on all issues relating to a claim, the opposing party is on notice that it should raise any issue relating to the claim.[71] Failure to raise these issues can lead to a finding of waiver.[72]

Earlier in this suit, the ArcLight Entities and Freepoint moved for partial summary judgment on the issue of Lexington's duty to defend.[73] Lexington opposed the motions but didn't cross-move for partial summary judgment.[74] The pre-tender costs issue did not come within the scope of the earlier motion practice. The prior motions concerned the underlying complaints and whether they triggered the duty to defend. Lexington wasn't required to argue that, in the alternative, even if it has a duty to defend, it isn't liable for pre-tender costs. Accordingly, Lexington didn't waive its right to assert that pre-tender costs aren't recoverable.

## B. DELAWARE REQUIRES INSURERS TO SHOW PREJUDICE TO ESCHEW COVERAGE BASED ON AN INSURED BREACHING A CONDITION PRECEDENT TO COVERAGE.

To begin its substantive analysis here, the Court looks at Delaware's

---

[71] *N. Am. Leasing, Inc. v. NASDI Holdings, LLC*, 276 A.3d 463, 471 (Del. 2022).

[72] *Id.*

[73] D.I. 7, 29.

[74] D.I. 31, 32.

history of considering prejudice to insurers when an insured breached a condition to coverage in an insurance policy. When laying this history alongside Delaware's abhorrence of forfeiture relating to insurance and conditions precedent in contracts, one must conclude that Delaware law requires an insurer to show prejudice before that insurer can avoid paying pre-tender costs.

### 1. The Implied-Prejudice Rule.

In 1974, our Supreme Court confronted an issue of first impression: is an insurance carrier freed of liability on its policy in the absence of some showing that the insured's breach caused the insurer's interest to be prejudiced?[75] The Court recognized a jurisdictional split on the issue.[76] The Court also observed that, no doubt, the purpose of a notice provision is to protect an insurance company from any resulting prejudice.[77] But an insurance contract should be read to accord with the reasonable expectations of the purchaser so far as its language will permit.[78] While expressing concern with the result of forfeiture, the Court determined that "when an insured fails in his burden of proving compliance with the notice condition, before any forfeiture can result, the insurer

---

[75] *State Farm Mut. Auto. Ins. Co. v. Johnson*, 320 A.2d 345, 346 (Del. 1974).

[76] *Id.*

[77] *Id.* at 347.

[78] *Id.*

has the burden of showing that it has thereby been prejudiced."[79]

A decade later, this Court addressed a similar issue involving a policy's consent-to-settlement provision in *Hall v. Allstate Insurance*.[80] After noting the Supreme Court's *Johnson* decision, this Court decided that "prejudice to the insurer should also be considered in cases of violation of the consent-to-settlement provision of an insurance policy."[81] In doing so, the Court expanded the reach of the *Johnson* prejudice analysis to include notice provisions and consent-to-settlement provisions as well. The *Hall* decision has been cited by this Court as precedent that the implied-prejudice rule applies to consent-to-settlement provisions in insurance agreements.[82]

Forty years after *Hall*, in *Home Insurance Co. v. American Insurance Group*, this Court addressed the type of notice required to trigger the duty to defend.[83] The Court acknowledged that the Delaware Supreme Court hadn't yet spoken on that issue and that other jurisdictions were divided on it.[84] The Court

---

[79] *Id.*

[80] *See Hall v. Allstate Ins. Co.*, 1985 WL 1137299, at *7 (Del. Super. Ct. Jan. 11, 1985).

[81] *Id.* at *8–9.

[82] *Allstate Ins. Co. v. Fie*, 2006 WL 1520088, at *4 n.20–21 (Del. Super. Ct. Mar. 9, 2006); *Solera Holdings, Inc. v. XL Specialty Ins. Co.*, 213 A.3d 1249, 1258–59 (Del. Super. Ct. 2019), *opinion clarified*, 2019 WL 4120688 (Del. Super. Ct. Aug. 29, 2019), and *rev'd on other grounds sub nom. In re Solera Ins. Coverage Appeals*, 240 A.3d 1121 (Del. 2020).

[83] *Home Ins. Co. v. Am. Ins. Grp.*, 2003 WL 22683008, at *4 (Del. Super. Ct. Oct. 30, 2003).

[84] *Id.*

then concluded that the insurer was only liable for defense costs that arose after being notified of the underlying lawsuit the plaintiffs sought coverage for, without completing a prejudice analysis.[85]  Later, the Southern District of New York cited *Home Insurance* when concluding that, under Delaware law, an insurer is not liable for the pre-tender defense costs incurred by the insured, irrespective of the existence of prejudice.[86]

Then, in *Solera Holdings, Inc. v. XL Specialty Insurance Company,*[87] this Court found that there was no reason the implied-prejudice requirement that Delaware courts apply to consent-to-settle clauses would not also apply to consent-to-defense provisions and applied the implied-prejudice rule to pre-tender costs.[88]  Lexington argues that *Solera* wrongly applied the implied-prejudice rule to a consent-to-defense provision and cites back to *Home Insurance*.[89]

---

[85]  *Id.* at *4–5.

[86]  *Abrams v. RSUI Idemnity Co.*, 272 F. Supp. 3d 636, 641–42 (S.D.N.Y. 2017).

[87]  213 A.3d 1249 (Del. Super. Ct. 2019) *rev'd on other grounds sub nom. In re Solera Ins. Coverage Appeals*, 240 A.3d 1121 (Del. 2020).

[88]  *Id.* at 1258–59.

[89]  Lexington ArcLight Br. at 24–30.  One would rightly consider *Home Insurance* an outlier as:  1) it appears only one Delaware court has ever cited it—and did not cite it relating to pre-tender costs; 2) it did not mention forfeiture; and 3) it did not mention prejudice.  *See Juliano v. State*, 254 A.3d 369, 383 (Del. 2020) (finding that a Superior Court decision was an outlier as it had not been followed in any other Superior Court decisions).  What's more, the Court is persuaded that—were it to speak on the matter—the Delaware Supreme Court would likely require a showing of prejudice; this is fleshed out further below.

Harmonizing this caselaw, the Court finds that Delaware courts have consistently been concerned with the harsh outcome of forfeiture in insurance disputes when the policy would otherwise provide coverage. And, thus, they apply the implied-prejudice rule regularly.[90] Indeed, most other courts have held that a showing of prejudice is required before forfeiture in insurance contracts when the insured fails to comply with a condition precedent and the policy expressly provides coverage.[91] That said, courts are split on whether the implied-prejudice rule applies to pre-tender *costs*, and the majority rule is that an insurer isn't liable for

---

[90] *Johnson*, 320 A.2d at 347 ("Therefore, we hold that when an insured fails in his burden of proving compliance with the notice condition, before any forfeiture can result, the insurer has the burden of showing that it has thereby been prejudiced."); *Wilhelm v. Nationwide Gen. Ins. Co.*, 2011 WL 4448061, at *3–4 (Del. Super. Ct. May 11, 2011), *aff'd*, 29 A.3d 246 (Del. 2011) (recognizing the *Johnson* decision and the Court's concern of forfeiture when a claim is covered by the policy); *see also Med. Depot, Inc. v. RSUI Indem. Co.*, 2016 WL 5539879, at *11 (Del. Super. Ct. Sept. 29, 2016*), abrogated on other grounds by First Solar, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 274 A.3d 1006 (Del. 2022) ("Delaware law abhors forfeiture where to do so would deny the insured the very thing paid for.").

[91] *See Hernandez v. Gulf Grp. Lloyds*, 875 S.W.2d 691, 692 (Tex. 1994) ("We hold that an insurer may escape liability on the basis of a settlement-without-consent exclusion only when the insurer is actually prejudiced by the insured's settlement with the tortfeasor."); *Lauric v. USAA Cas. Ins. Co.*, 209 P.3d 190, 193 (Colo. App. 2009) ("We conclude that the notice-prejudice rule applies to an insured's failure to notify the insurer and obtain its consent to a settlement in violation of notice and consent-to-settle clauses in a UIM case."); *State Farm Mut. Auto. Ins. Co. v. Fennema*, 110 P.3d 491, 492 (N.M. 2005) ("[W]e hold that for an insurer to justify foreclosing an insured's right to underinsured motorist benefits, the insurer must demonstrate it was substantially prejudiced by the insured's breach of the consent-to-settle provision."); *Nationwide Ins. Co. v. Schneider*, 906 A.2d 586, 591 (Pa. Super. Ct. 2006), *aff'd*, 960 A.2d 442 (Pa. 2008) ("Even if the primary UIM insurer is a "liable party" under the UIM provisions of the policy, when an insured settles in contravention of a policy's consent-to-settle clause, an insurer must show that its interests are prejudiced."); *Dominion Energy, Inc. v. Zurich Am. Ins. Co.*, 2016 WL 1032771, at *6–7 (D. Conn. Mar. 15, 2016) (applying Massachusetts law and determining that insurer had to pay pre-tender costs since there was no prejudice).

these costs.[92]

**2. Were one using Delaware law, the Policy would be viewed as creating conditions precedent to coverage—not exclusions—and Lexington would have to show prejudice to avoid covering pre-tender costs.**

Insurance policies are contracts.[93] So long as an insurance contract doesn't exclude coverage required by law, doesn't violate any statute, and doesn't violate any public policy, the insurance agreement determines the extent of the insurer's liability.[94] In Delaware, contract interpretation is a determination of law.[95] The Court will construe the contract "as a whole, giving effect to all provisions therein."[96] Clear and unambiguous language will be given its ordinary and usual meaning.[97] And in the end, an insurer shoulders the burden of proving that a loss or claim is excluded under the policy.[98]

First, for Lexington to be liable for these pre-tender costs, the Policy must

---

[92] *See Am. Mut. Liab. Ins. Co. v. Beatrice Companies, Inc.*, 924 F. Supp. 861, 873–74 (N.D. Ill. 1996), *as amended* (Apr. 25, 1996) (discussing the two differing approaches to pre-tender costs without notice).

[93] *IDT Corp. v. U.S. Specialty Ins. Co.*, 2019 WL 413692, at *7 (Del. Super. Ct. Jan. 31, 2019).

[94] 16 *Williston on Contracts* § 49:1 (4th ed. 2025).

[95] *CNH Am., LLC v. Am. Cas. Co. of Reading, Pennsylvania*, 2014 WL 626030, at *4 (Del. Super. Ct. Jan. 6, 2014).

[96] *Id.*

[97] *Id.*

[98] *See Natl. Union Fire Ins. Co. Pittsburgh, P.A. v. Rhone-Poulenc Basic Chemicals Co.*, 1992 WL 22690 (Del. Super. Ct. Jan. 16, 1992), *aff'd sub nom, Rhone-Poulenc Basic Chemicals Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192 (Del. 1992).

provide for coverage. Here, the pre-tender costs and fees fall under **Claim Expenses** in the Policy. And the Policy provides that **Claim Expenses** are "[f]ees charged by any lawyer *designated by [Lexington]*" *and* "[a]ll other fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a **Claim**, *if authorized by [Lexington]*."[99] The natural read of this language is that Lexington must give authorization as a condition to coverage of fees and costs relating to the defense of a **Claim**. So, the Policy covers these pre-tender costs, provided that the Insureds obtained Lexington's authorization.[100] In other words, the authorization requirement is a consent provision. In addition, there are other express conditions precedent in the Policy.

The non-occurrence of a condition precedent can lead to a forfeiture.[101] "A condition precedent is an act or event, other than a lapse of time, that must exist or occur *before* a duty to perform something promised arises."[102] And "'[a] forfeiture is generally understood as a deprivation of rights or property as a result

---

[99] Policy § VI. D. (emphasis added).

[100] Because of the conditional language, the Court views the authorization requirement as a condition precedent to coverage, not as an exclusion to coverage. *See* 17 *Williston on Contracts* § 49:111 (4th ed. 2025) ("Exclusions from or exceptions to coverage are different from . . . conditions set forth in policies, although the two are often confused. An exception or exclusion in a policy of insurance is a limitation of liability or a carving out of certain types of loss to which the coverage or protection of the policy does not apply.").

[101] *Thompson St. Capital Partners IV, L.P. v. Sonova United States Hearing Instruments, LLC*, 340 A.3d 1151, 1168 (Del. 2025) (citation omitted).

[102] *Id.* at 1167 (emphasis in original) (cleaned up).

of the nonperformance of some obligation or condition.'"[103]

Here, the Policy provides that Lexington is on the hook for fees and costs related to a **Claim** if they are authorized by Lexington.[104] The use of terms like "if," "provided that," "on condition that," or some other phraseology that conditions performance usually connotates an intent for a condition rather than a promise.[105] The "if" in the Policy shows an intent to create a condition precedent, and Lexington's authorization is an act that had to exist to trigger coverage for **Claim Expenses**. Therefore, Lexington's authorization is a condition precedent to coverage, not an exclusion of coverage for any fees that Lexington didn't authorize.

The express conditions in the Policy are much easier to identify as conditions. The parties expressly call them conditions to coverage.[106] Under the express conditions, and relevant to these motions, the **Insured** had to give notice to Lexington to obtain coverage.[107] "'For a condition to effect a forfeiture, it must be unambiguous. If the language does not clearly provide for a forfeiture, then a

---

[103] *Id.* at 1168 (quoting *Nw. Cent. Pipeline Corp. v. Mesa Petroleum Co.*, 1985 WL 44696, at *4 (Del. Ch. Apr. 10, 1985)).

[104] Policy § VI. D.

[105] *Shilling v. Shilling*, 332 A.3d 453, 466 (Del. 2024) (cleaned up).

[106] Policy §§ III; V. Q.

[107] *Id.* §§ III (1), V. Q.

court will construe the agreement to avoid causing one.'"[108]  The Policy doesn't contain explicit consequences for failure to comply with any conditions, so the Court doesn't read the Policy to provide for forfeiture for failure to comply with its conditions precedent to coverage.[109]

The Court here accords with its earlier decision in *Solera*—there is no reason why Delaware courts wouldn't apply the implied-prejudice rule to consent and notice provisions in insurance agreements relating to pre-tender costs.[110]  The Court finds three justifications to be particularly persuasive in favor of requiring an insurer to show prejudice before avoiding all pre-tender costs:    (1) the notice and consent condition breaches are not material breaches and, thusly, don't impact coverage; (2) the purpose of notice and consent provisions is to protect an insurer's interests but does not impact the duty to defend; and (3) allowing an insurer to dodge pre-tender costs leads to a windfall in favor of the insurer, not the other way around.

*First*, the notice and consent breaches aren't material breaches that warrant forfeiture of all pre-tender costs.  "A party may be excused from performing if

---

[108]  *Thompson St.*, 340 A.3d at 1172 (quoting *QC Holdings, Inc. v. Allconnect, Inc.*, 2018 WL 4091721, at *7 (Del. Ch. Aug. 28, 2018)).

[109]  *See* Policy § III (lacking language indicating an intent to provide for a forfeiture for failure to comply).

[110]  *Solera Holdings, Inc.*, 213 A.3d at 1259.

the other party is in material breach."[111]  Materiality of a breach is "determined by 'weighing the consequences in light of the actual custom of men in the performance of contracts similar to the one that is involved in the specific case.'"[112]  This occurs when the party's failure is "so fundamental to a contract that the failure . . . defeats the essential purpose of the contract or makes it impossible for the other party to perform the contract."[113]  "Conversely, a slight breach by one party, while giving rise to an action for damages, does not terminate the injured party's obligations under the contract."[114]  Here, the Policy's main purpose is for the Insureds to pay their premiums and for Lexington to provide coverage, which includes a duty to defend and indemnify.[115]  Too, the

---

[111] *Est. of Buller v. Montague*, 2020 WL 996883, at *3 (Del. Super. Ct. Mar. 2, 2020).

[112] *Carey v. Est. of Myers*, 2015 WL 4087056, at *20 (Del. Super. Ct. July 1, 2015), *aff'd*, 2016 WL 345616 (Del. Jan. 28, 2016) (citing *Preferred Inv. Services v. T & H Bail Bonds*, 2013 WL 3934992, at *21 (Del. Ch. July 24, 2013)).

[113] *Shore Invs., Inc. v. Bhole, Inc.*, 2011 WL 5967253, at *5 (Del. Super. Ct. Nov. 28, 2011), *amended by* 2012 WL 2337793 (Del. Super. Ct. Apr. 9, 2012), *aff'd in part, rev'd in part*, 67 A.3d 444 (Del. 2013)) (quoting 23 *Williston on Contracts* § 63:3 (4th ed. 2021)).  "Delaware courts have adopted the factors set forth in the Restatement of Contracts to consider the materiality of a breach, including: '(a) the extent to which the injured party will be deprived of the benefit of which he reasonably expected; (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived; (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture; (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all of the circumstances including any reasonable assurances; and (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.'" *Roberts v. Moffa Constr. Co. LLC*, 2024 WL 5184100, at *3 (Del. Super. Ct. Dec. 20, 2024) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 241 (A.L.I 1981)).

[114] *Est. of Myers*, 2015 WL 4087056, at *20.

[115] Stephen A. Klein, *Insurance Recovery of Prenotice Defense Costs,* 34 TORT & INS. L.J.

Restatement factors don't favor a material breach as Lexington: collected the premiums; can still avoid paying the pre-tender costs if it shows prejudice; loses only the ability to control the defense from the get-go; gains a forfeiture; and doesn't allege that there is bad faith. Breaches of notice and consent provisions don't impact the Policy's main purpose and are not material breaches. These provisions' purpose is to protect the insurer's rights—not to operate as a "technical escape hatch" to coverage.[116]

*Second*, the notice and consent provisions' purpose is to protect Lexington's right to control the defense and protect its own interests relating to its duties to defend and indemnify. It's well-settled that damages for a breach of contract are expectation damages.[117] "When determining expectation damages, courts determine an amount that will give the injured party 'the benefit of its bargain by putting that party in the position it would have been but for the breach.'"[118] Even if the Insureds had given timely notice and obtained consent before spending any defense costs, Lexington still had to defend the Insureds based on the underlying class action complaint and would have been able to control the defense. The factual allegations in the underlying complaint invoke

---

1103, 1114–15 (1999).

[116] Klein, 34 TORT & INS. L.J. at 1112.

[117] *Leaf Invenergy Co. v. Invenergy Renewables LLC*, 210 A.3d 688, 695 (Del. 2019).

[118] *Id*. (citing *Genencor Int'l, Inc. v. Novo Nordisk A/S*, 766 A.2d 8, 11 (Del. 2000)).

an insurer's duty to defend.[119]  And "[u]nder Delaware's liberal duty to defend standard, an insurer's primary obligation is to provide a defense whenever a potential for coverage exists."[120] Lexington's supposed damage stems from missing out on the opportunity to control the defense.  This damage is not, however, related to its duty to defend or contractual duty to provide coverage.[121] Avoidance of all pre-tender costs isn't the proper remedy for just any of an insured's alleged breaches of conditions in a policy.[122]  Instead, Lexington must show that it was prejudiced by the lack of notice and consent, and that its alleged damage flows directly from the alleged breaches.

*Third*, allowing Lexington to avoid pre-tender costs would give Lexington a windfall.[123]  A windfall is "[a]n unanticipated benefit, usu. in the form of a

---

[119] *Westfield Ins. Co., Inc. v. Miranda & Hardt Contracting & Bldg. Servs., L.L.C.*, 2015 WL 1477970, at *2 (Del. Super. Ct. Mar. 30, 2015); *See ACE Am. Ins. Co. v. Rite Aid Corp.*, 270 A.3d 239, 250 (Del. 2022) (agreeing that both Delaware and Pennsylvania law recognize that carriers have a broad duty to defend that may be triggered by the factual allegations in the pleadings).

[120] *Syngenta Crop Prot., LLC v. Travelers Cas. & Sur. Co.*, 2026 WL 461297, at *7 (Del. Super. Ct. Jan. 30, 2026), *appeal refused,* 2026 WL 1068154 (Del. Apr. 20, 2026) (citing *CVR Ref., LP v. XL Specialty Ins. Co.*, 2021 WL 5492671, at *9 (Del. Super. Ct. Nov. 23, 2021)).

[121] *See* Klein, 34 TORT & INS. L.J. at 1110–12.

[122] *See In re Dura Medic Holdings, Inc. Consol. Litig.*, 333 A.3d 227, 255 (Del. Ch. 2025) ("In addition to showing the existence of damages, the plaintiff must show that the damages flowed from the defendant's violation of the contract.").

[123] *See* Def. Lexington Insurance Company's Reply Br. in Supp. of Cross-Mot. Against Pl.-Intervenor Freepoint Commodities LLC for Partial Summ. J. Regarding Pre-Tender Defense Costs at 14 (arguing that the ArcLight Entities seek windfall relief in the form of coverage for defense costs spent without Lexington's consent).

profit and not caused by the recipient."[124]  Lexington doesn't contend that the insureds failed to pay the premiums on the Policy.  So, Lexington has been receiving the premiums and—due to lack of notice and consent before the Insureds expended defense costs—claims it should be able to avoid almost all costs relating to its duty to defend.  This would allow Lexington to retain the premiums it received in exchange for coverage without paying for defense costs incurred without its consent.  Unless Lexington shows prejudice from this lack of notice and consent, it would be a windfall to allow Lexington to avoid its duty to defend for lack of notice and consent.

To reiterate, Delaware law abhors a forfeiture.  It seems especially so when it comes to forfeiture under insurance contracts.  And Delaware has a long line of precedent supporting the notion that an insurer cannot escape liability for breach of a policy's notice or consent provisions without showing prejudice.  Thereunder, it would seem an insurer wouldn't be hard-pressed to avoid coverage of pre-tender costs before notice when, if there was proper notice, the insurer still would have to follow its duty to defend the insured.  And so, under Delaware law, Lexington must bear the burden to show that the violations of these conditions prejudiced it to avoid paying pre-tender costs included within its duty to defend.

---

[124] *Windfall*, BLACK'S LAW DICTIONARY 1922 (12th ed. 2024).

**C. THERE IS A CONFLICT BETWEEN DELAWARE AND USVI LAW SINCE USVI COURTS WOULD LIKELY ADOPT THE MAJORITY VIEW THAT ABSOLVES AN INSURER FROM LIABILITY OF PRE-TENDER COSTS.**

According to Lexington, were the Court to find a prejudice requirement under Delaware law, then there is a conflict between Delaware and USVI law.[125] Lexington cites *Erie Ins. Exchange v. Virgin Islands Enterprises, Inc*[126] to support this assertion.[127] There, the federal district court of the Virgin Islands considered prejudice relating to a lack of notice—like Delaware—, but explicitly followed the majority rule relating to the recovery of pre-tender costs.[128] In fact, the court cited caselaw applying the no-recovery-of-pre-tender-costs rule when concluding that the insurer wasn't responsible for pre-tender costs.[129]

No doubt, USVI and Delaware courts require a showing of prejudice for an insurer to avoid *coverage* for an insured's breach of a notice condition.[130] But this is the majority rule relating to breach of notice provisions in insurance

---

[125] Lexington ArcLight Br. at 30–35.

[126] 264 F. Supp. 2d 261 (D.V.I. 2003).

[127] Lexington ArcLight Br. at 30.

[128] *See Erie Ins. Exch. v. Virgin Islands Enterprises, Inc.*, 264 F. Supp. 2d 261, 264–65 (D.V.I. 2003).

[129] *See id.* at 265 (citing several federal decisions holding that insurer isn't liable for pre-tender defense costs).

[130] *MacMary Corp. v. Manufacturers Tr. Ins. Co.*, 18 V.I. 570, 580 (D.V.I. 1981); *La Place v. Sun Ins. Office, Ltd.*, 298 F. Supp. 764, 767 (D.V.I. 1969); *Cowpet Bay Vill. - Stage III v. Commercial Union Assur. Co., Ltd.*, 1994 WL 714501, at *5 (D.V.I. Nov. 8, 1994).

policies.[131]  And in the only case where a USVI court directly addressed *pre-tender costs*, the court denied reimbursement and didn't determine whether there was prejudice to the insurer.[132]  This caselaw supports the notion that USVI courts would follow the majority rule relating to pre-tender costs.

And the majority view of state and federal courts appears to be that an insured cannot recover pre-tender or pre-notice costs, regardless of prejudice to the insurer, because an insurer isn't liable for costs before notice.[133]  Indeed, several treatises confirm that this is the majority view.[134]  Conversely, the Supreme Courts of Washington and Maryland have affirmed that they follow the minority rule and require a prejudice showing for an insurer to avoid liability for pre-tender costs.[135]

---

[131]  13A *Couch on Insurance* § 193:49 (Dec. 2025 Update); 16 *Williston on Contracts* § 49:88 (4th ed. 2025).

[132]  *Erie Ins. Exch.*, 264 F. Supp. 2d at 265.

[133]  *Dreaded, Inc. v. St. Paul Guardian Ins. Co.*, 904 N.E.2d 1267, 1273 (Ind. 2009); *SL Indus., Inc. v. Am. Motorists Ins. Co.*, 607 A.2d 1266, 1273 (N.J. 1992); *Towne Realty, Inc. v. Zurich Ins. Co.*, 548 N.W.2d 64, 68 (Wis. 1996); *Great Am. Ins. Co. v. Aetna Cas. & Sur. Co.*, 876 P.2d 1314, 1320 (Haw. 1994); *Rass Corp. v. Travelers Companies, Inc.*, 63 N.E.3d 40, 47 (Mass. App. Ct. 2016); *Elan Pharm. Research Corp. v. Employers Ins. of Wausau*, 144 F.3d 1372, 1382 (11th Cir. 1998); *Lafarge Corp. v. Hartford Cas. Ins. Co.*, 61 F.3d 389, 399 (5th Cir. 1995); *Burgett, Inc. v. Am. Zurich Ins. Co.*, 875 F. Supp. 2d 1125, 1127 (E.D. Cal. 2012*), as corrected* (Aug. 24, 2012); *United States Fire Ins. Co. v. City of Warren*, 2012 WL 13006043, at *7 (E.D. Mich. July 25, 2012); *Crist v. Ins. Co. of N. Am.*, 529 F. Supp. 601, 604 (D. Utah 1982); *Ottawa Bancshares, Inc. v. Great Am. Sec. Ins. Co.*, 764 F. Supp. 3d 1079, 1091 (D. Kan. 2025).

[134]  1 *Insurance Claims and Disputes* § 4:44 (6th ed. 2025); 14A *Couch on Insurance* §§ 200:35; 205:75 (Dec. 2025 Update); 4 *Bruner & O'Connor Construction Law* § 11:279 (Jan. 2026 Update); 2 *Law and Prac. of Ins. Coverage Litig.* § 27:10 (July 2025 Update).

[135]  *Nat'l Sur. Corp. v. Immunex Corp.*, 297 P.3d 688, 696–97 (Wash. 2013); *Sherwood*

At bottom, there is strong reason to find that USVI courts would follow the majority rule. When the Supreme Court of the Virgin Islands hasn't addressed an issue yet, USVI courts consider: (1) whether any Virgin Islands courts have previously adopted a particular rule; (2) the position taken by a majority of courts from other jurisdictions; and (3) most importantly, which approach represents the soundest rule for the Virgin Islands.[136] Here, the federal district court of the Virgin Islands has directly spoken on this issue and aligned with the majority rule.[137] And, while Delaware may express a strong abhorrence to forfeiture in insurance disputes, there is no inkling that USVI courts would share that view, leading them to depart from the majority rule.[138] So, since there is nothing to suggest that USVI law would stray from the majority in such insurance disputes, and there is caselaw applying the majority rule, it seems far

_Brands, Inc. v. Hartford Acc. & Indem. Co._, 698 A.2d 1078, 1087 (Md. 1997).

[136] _Hess Oil Virgin Islands Corp. v. Daniel_, 2020 WL 1819622, at *14 (V.I. Super. Ct. Apr. 8, 2020).

[137] The Court recognizes that the Supreme Court of the Virgin Islands isn't bound by federal district court decisions interpreting local USVI law. _Defoe v. Phillip_, 2012 WL 37404, at *3 (V.I. Jan. 5, 2012), _aff'd,_ 702 F.3d 735 (3d Cir. 2012). Still, the Court finds that the _Erie_ case is persuasive on this point since it was applying the majority rule and assumed that USVI law would indeed follow the majority rule. And, no doubt, the Supreme Court of the Virgin Islands gives "great respect" to prior USVI Federal District Court decisions, even though they are only persuasive precedent. _Banks v. Int'l Rental & Leasing Corp._, 2011 WL 6299025, at *6 (V.I. Dec. 15, 2011).

[138] _See Roy v. Banco Popular de Puerto Rico_, 2018 WL 4178704, at *5–7 (V.I. Super. Ct. Aug. 29, 2018) (ruling that a commitment letter contained a condition precedent and allowed for a forfeiture based on the Restatement (Second) of Contracts).

more likely that USVI courts would indeed adopt the majority view.

Lastly, looking at recent Superior Court of the Virgin Islands caselaw in insurance disputes, that court tends to cite to general principles in insurance treatises and past Virgin Islands' federal district court caselaw as persuasive authority.[139] The same goes for the Supreme Court of the Virgin Islands' decisions relating to majority rules.[140] Again, the *Erie* decision and several leading treatises support the majority view that an insurer isn't liable for pre-tender costs, full stop. With all that, the Court finds (as best it can), that under USVI law an insurer isn't liable for pre-tender costs, regardless of a showing of prejudice. This conflicts with Delaware law because Delaware law requires a showing of prejudice for the insurer to avoid paying pre-tender costs. And since there is a conflict between Delaware and USVI law, the Court must determine which jurisdiction has a stronger connection to this litigation.

---

[139] *See Guardian Gen. Ins. Ltd. v. Caribbean Food Servs., Inc.*, 2016 WL 9224992, at *12 n.79, 82 (V.I. Super. Oct. 24, 2016); *Davies v. Certain Underwriters at Lloyds of London*, 2017 WL 3759810, at *9 n.58 (V.I. Super. Aug. 25, 2017); *Bank of Nova Scotia v. Herman*, 2016 WL 3007489, at *4 n. 13–14 (V.I. Super. May 13, 2016) (adopting majority rule in relation to condition precedent and citing to the Restatement (Second) of Contracts and *Williston on Contracts*).

[140] *See Joseph v. Inter-Ocean Ins. Agency, Inc.*, 2013 WL 5397407, at *4 (V.I. Sept. 25, 2013) (citing to treatises to follow majority rule relating to insurer seeking reimbursement); *see also Pelle v. Certain Underwriters at Lloyd's of London*, 2017 WL 416302, at *4 (V.I. Jan. 31, 2017) (citing cases from other jurisdictions to apply fundamental tenets of agency law); *Banks*, 2011 WL 6299025, at *7 (adopting rule followed by the majority of U.S. jurisdictions relating to lessor being strictly liable for injuries resulting from a defective product).

**D. THE USVI HAS A MORE SIGNIFICANT RELATIONSHIP TO THIS DISPUTE AS IT IS THE LOCATION OF THE INSURED RISK.**

Turning to the third step of its conflict-of-law analysis, the Court must determine whether Delaware or the USVI has a more significant relationship to this suit. Recall, the Restatement's presumption that the state that the parties understood was to be the principal location of the insured risk applies to insurance policies.[141] Here, the ArcLight Entities and Freepoint seem to only contend that USVI law doesn't apply because there is no conflict, not that the USVI lacks a significant relationship to the dispute.[142]

The parties understood that the insured risk's principal location was in the USVI—that's really the only place where the insured activity would occur,[143] and the First Named Insured in the Policy, LBR, is a USVI entity.[144] And while the litigating parties are Delaware entities, LBR, the USVI entity, was responsible

---

[141]   *See Chemtura*, 160 A.3d at 465 (explaining that "[t]he *Second Restatement* provides a presumption for insurance contracts, that, as a general matter, the law of the state which the parties understood was to be the principal location of the insured risk should be applied because that state will typically have the most significant relationship") (cleaned up).

[142]   *See* The ArcLight Entities' Opp'n to Def. Lexington Insurance Company's Cross-Mot. for Partial Summ. J. Regarding Pre-Tender Defense Costs at 16–17 (averring that there is no conflict between USVI and Delaware law); *see also* Pl.-Intervenor Freepoint Commodities LLC's Answering Br. in Opp'n to Def. Lexington Insurance Company's Cross-Mot. for Partial Summ. J. Regarding Pre-Tender Defense Costs at 9–12 (arguing that USVI law is inapplicable because it doesn't conflict with Delaware law).

[143]   *Compare Chemtura*, 160 A.3d at 465 (the policies at issue there "provide[d] broad-based coverage across many jurisdictions for a company's enterprise-wide risks").

[144]   Policy, Declarations and Endorsement No. 3; McCurry Aff., ¶ 4.

for paying the premiums on the Policy, and the Policy's subject matter is in the USVI.[145] So in this instance, the location of the insured risk outweighs the mere fact that some entities are Delaware entities.[146] The fact that the parties didn't negotiate the Policy in Delaware[147] further belies any contention that Delaware has a stronger connection to this action than the USVI.

With all this, the Restatement factors favor the USVI, and the Court should apply USVI law to the Policy. And since USVI law wouldn't allow an insured to recover pre-tender defense costs, Lexington simply isn't liable for those costs without regard to Lexington's ability or inability to show prejudice. As such, Lexington's motion for partial summary judgment on this point is **GRANTED** and the ArcLight Entities' and Freepoint's opposing motions on this point are **DENIED**.

### E. ACP ISN'T NAMED ON THE POLICY AND THE ARCLIGHT ENTITIES HAVE FAILED TO DEMONSTRATE THAT MORE DISCOVERY IS NECESSARY.

Lexington posits that ACP isn't covered by the Policy, so Lexington need

---

[145] Policy, Endorsement No. 3; McCurry Aff., ¶ 4; Simeone Aff., ¶ 5.

[146] The Court also notes that none of the parties have their principal place of business in Delaware. The fact that parties are incorporated or organized under Delaware law can be a relatively weak factor in a given conflict-of-law analysis. *See Focus Fin. Partners, LLC v. Holsopple*, 250 A.3d 939, 966 (Del. Ch. 2020) ("By contrast, under the *Restatement* test, the fact that Sensus was incorporated in Delaware is the weakest factor for purposes of an employment dispute.").

[147] Burr Aff. ¶ 19, Ex. K.

neither defend nor cover ACP.[148]   The ArcLight Entities respond that: (1) this line of argument improperly goes beyond the scope of their motion for partial summary judgment; (2) Lexington waived its arguments relating to coverage; and (3) more discovery is needed to determine if the Policy covers ACP.[149]

First, the ArcLight Entities' motion for partial summary judgment doesn't limit the scope of Lexington's cross-motion for summary judgment.  A court first examines each of the cross-motions separately.[150]  And the existence of cross-motions doesn't change the standard for or rules applied in summary judgment.[151]  Hence, there is nothing limiting Lexington's ability to bring this issue in its own motion for partial summary judgment.

Second, Lexington didn't waive its right to avoid paying out coverage to a claimed insured that isn't actually covered by the Policy by failing to raise that exact issue in its correspondence with the ArcLight Entities.   In the

---

[148]  Lexington ArcLight Br. at 20–22.

[149]  The ArcLight Entities' Opp'n to Def. Lexington Insurance Company's Cross-Mot. for Partial Summ. J. Regarding Pre-Tender Defense Costs at 27–30.

[150]  *Bernstein v. TractManager, Inc.*, 953 A.2d 1003, 1007 (Del. Ch. 2007) (citing *Union Oil Co. of Calif. v. Mobil Pipeline Co.,* No. 19395, 2006 WL 3770834, at *9 (Del. Ch. Dec. 15, 2006)); *Envolve Pharmacy Sols., Inc. v. Rite Aid Headquarters Corp.*, 2023 WL 2547994, at *7 (Del. Super. Ct. Mar. 17, 2023) (when cross-motions for summary judgment are filed, "the Court evaluates each motion separately").

[151]  *Bernstein*, 953 A.2d at 1007 (citing *Mehiel v. Solo Cup Co.,* 2005 WL 1252348, at *3 (Del. Ch. May 13, 2005)).  *See also Harman Int'l Indus., Inc. v. Illinois Nat'l Ins. Co.*, 2025 WL 84702, at *5 (Del. Super. Ct. Jan. 7, 2025) ("The Court's well-established standards and rules apply in full when the parties have filed cross-motions for summary judgment.") (cleaned up).

correspondence, Lexington indicated that the underlying lawsuits were not covered by the Policy.[152]  Holding that anything missing in the initial correspondence waived Lexington's ability to avoid covering entities the Policy doesn't cover would "create a new contract between the parties" by creating coverage "where none is contracted for by the parties."[153]  Lexington didn't waive this line of argument.

Third, the ArcLight Entities have failed to demonstrate that more discovery is needed.  The ArcLight Entities say that more discovery is warranted to see if the Policy covers ACP:

> AIG's cross-motion seeks relief regarding coverage for ACP that goes beyond the relief sought in the ArcLight Entities' motion and which cannot be granted absent discovery, which is ongoing. This is reflected in the ArcLight Entities' Rule 56 affidavit.[154]

Under Superior Court Civil Rule 56(f), the Court can decline to award summary judgment if more discovery is needed:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the Court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or make such other order as is just.

---

[152] *See* Sugzda Aff., Ex. I. (D.I. 68).

[153] *Martin v. Colonial Ins. Co. of California*, 644 F. Supp. 349, 352 (D. Del. 1986).

[154] ArcLight Reply at 4.

"'To invoke Rule 56(f), the opposing party must submit an affidavit requesting discovery and stating its scope.'"[155] And the non-moving party shoulders the onus to state "'with some degree of specificity, the additional facts sought by the requested discovery.'"[156] The ArcLight Entities' Rule 56(f) affidavit attests that: (1) *Lexington* has sought documents or information that would show that ACP qualifies as an insured; and (2) the parties are currently engaged in discovery on the issue.[157]

The Policy covers the **Insured**.[158] And the Policy defines **Insured** broadly:

> 1. The **Named Insured**;
>
> 2. Any person who is or was a director, officer, partner, member or employee, including a temporary or leased employee or shareholder of the **Named Insured** while acting within the scope of his or her duties as such;
>
> 3. Joint ventures in which the **Named Insured** is named as a co-venturer but only with respect to the liability arising out of the **Named Insured's Covered Operations**;
>
> 4. The client for whom the **Named Insured** performs or performed **Covered Operations**, provided that a written contract or agreement is in effect between the **Named Insured** and the client. However, such clients are covered

[155] *Bay Capital Fin., L.L.C. v. Barnes & Noble Educ., Inc.*, 2020 WL 1527784, at *10 (Del. Ch. Mar. 30, 2020) (quoting *Corkscrew Min. Ventures, Ltd. v. Preferred Real Estate Invs., Inc.*, 2011 WL 704470, at *3 (Del. Ch. Feb. 28, 2011)).

[156] *Id.* (quoting *Ryan v. Lyondell Chem. Co.*, 2008 WL 2923427, at *22 (Del. Ch. July 29, 2008), *rev'd on other grounds*, 970 A.2d 235 (Del. 2009)); *Level 3 Parent, LLC v. FirstDigital Communications, LLC*, 2025 WL 1042146, at *5 (Del. Super. Ct. Apr. 7, 2025 (noting that the party seeking discovery bears the burden of demonstrating the discovery requested is specific).

[157] Affidavit of Alexander M. Sugzda Pursuant to Superior Court Civil Rule 56(f) ¶¶ 6, 9. (D.I. 80) (emphasis added).

[158] Policy § I. 1.

under this Policy solely with respect to **Loss** arising from **Covered Operations** and are not covered for any Loss arising from the client's own liability. Clients of the **Named Insured** are covered under this Policy only for Limits of Liability up to and not exceeding the amount required by the written contract with the **Named Insured** and subject to the Limits of Liability of this Policy;

5. A Limited Liability Company in which the **Named Insured** is a member and all members but only with respect to the liability arising out of the **Named Insured's Covered Operations**; and

6. Owners, lessees, project lenders, financiers or contractors of a job site where **Covered Operations** are being performed by or on behalf of the **Named Insured** and the **Named Insured** is required under a written contract, executed prior to **Claim** or **Loss**, to add such entities as additional **Insured**(s) to this Policy but only with respect to the liability arising out of the **Named Insured's Covered Operations**. Such entities are covered under this Policy only for Limits of Liability up to and not exceeding the amount required by the written contract with the **Named Insured** and subject to the Limits of Liability of this Policy.[159]

Yet the ArcLight Entities don't, with any specificity, identify which bucket ACP falls into or what documents they might produce that could demonstrate that the Policy covers it. It is unclear how ACP seeks to obtain coverage, and its Rule 56(f) argument essentially asks the Court to allow a fishing expedition (or, more aptly, engage a crap shoot) to see whether it can make an argument for coverage. It has pointed to nothing it has and fails to explain how Lexington would be in a

_____

[159] Policy § VI. Q.

better position to have documentation revealing ACP's coverage, which—based on **Insured**'s definition in the Policy—would be based on ACP's relationship with the **Named Insured** or **Insureds**. The ArcLight Entities haven't carried their burden to avoid partial summary judgment under Rule 56(f). Accordingly, Lexington's Motion for Partial Summary Judgment against ACP is **GRANTED**.

## F. TENDER TO LEXINGTON.

To tender a defense, a formal demand isn't necessary.[160] But the insured still needs to expressly or implicitly request coverage.[161]

Here, LBR initially notified Lexington of the underlying lawsuits on January 11, 2022.[162] That letter attached the complaints from each of the underlying lawsuits, which named Freepoint as a defendant.[163] On February 24, 2023, counsel for Limetree Bay Terminals, LLC, sent a letter to Lexington and

---

[160] 1 *Insurance Claims and Disputes* § 4:1 (6th ed. 2025).

[161] 1 *Insurance Claims and Disputes* § 4:1 (6th ed. 2025); 5 *Couch on Ins.* § 72:20 (Dec. 2025 Update); *see Williams v. Inter-Ocean Ins. Agency, Inc.*, 2020 WL 8020082, at *1 (V.I. Super. Ct. Oct. 23, 2020) (noting that a suit was tendered to the carrier by giving notice); *see also Travelers Indem. Co. v. Hudson Excess Ins. Co.*, 786 F. Supp. 3d 821, 826 n.1 (S.D.N.Y. 2025) ("In insurance, 'tender' refers to a formal demand, made to an insurer by an insured or by a co-insurer, to take over defense of a claim and/or agree to indemnify the insured for potential liability on that claim."); *see also Erie Ins. Exch.*, 264 F. Supp. 2d at 264 ("Mere knowledge of a potentially covered claim by an insurer is not enough to constitute a tender.").

[162] Aff. of Lauren N. Smith in Supp. of Pl.-Intervenor Freepoint Commodities LLC's Mot. for Partial Summ. J. on Issue of Coverage for "Pre-Tender" Defense Costs [hereinafter "Smith Aff."] Ex. B [hereinafter "Notice of Claim"] (D.I. 69).

[163] Notice of Claim.

attached the amended complaints that listed LBH and Fund VI as defendants.[164] Similarly, this notice put Lexington on notice about LBH and Fund VI on February 24, 2023. These actions put Lexington on notice of the underlying lawsuits. But mere knowledge isn't enough to constitute a tender. There also needs to be knowledge that the insurer's assistance is desired.[165] Although Lexington was on notice of the underlying lawsuits, there was no request for coverage.

On January 8, 2024, Freepoint sent a letter to Lexington to confirm coverage.[166] This is Freepoint's date of tender, and it isn't entitled to costs incurred before that date under USVI law. Fund VI sent a letter to Lexington on January 25, 2024, to confirm that Lexington would defend it as well.[167] This is Fund VI's date of tender, and Fund VI and LBH aren't entitled to costs incurred before that date under USVI law.

LBH never sent a demand letter to Lexington requesting its defense. Fund VI's letter to Lexington doesn't explicitly say that LBH also requests a defense.[168] But it does say that "ArcLight Capital Partners, LLC has engaged lawyers from

---

[164] Sugzda Aff., Exs. B, C, and G (D.I. 68).

[165] *Erie Ins. Exch.*, 264 F. Supp. 2d at 264.

[166] Smith Aff., ¶ 10 and Ex. G.

[167] Simeone Aff., ¶ 14.

[168] *Id.*, Ex. E.

Kirkland & Ellis LLP to investigate the claims and defend ArcLight Fund VI, along with other ArcLight entities, in the actions . . . Fund VI does not expect Lexington to appoint counsel but does expect Lexington to honor its coverage and defense obligations under the Policy."[169] Policy Endorsement No. 3 adds Fund VI and LBH as **Named Insureds**.[170] Still, the Court doesn't find that Fund VI's letter to Lexington constituted LBH's tender to Lexington since Fund VI's letter never mentions that all the ArcLight Entities are seeking coverage. Fund VI's letter only seeks coverage for itself. And the Policy contains a **SEPARATION OF INSUREDS** provision that says the Policy applies to each **Named Insured** as if it were the only **Named Insured**:

> Except with respect to the Limits of Insurance, Section II Paragraph M. (Insured vs. Insured exclusion) and any rights or duties specifically assigned to the first **Named Insured**, this insurance applies: 1. As if each **Named Insured** were the only **Named Insured**; and 2. Separately to each **Insured** against whom a Claim is made or suit is brought. Misrepresentation, concealment, breach of a term or condition, or violation of any duty under this Policy by one **Insured** shall not prejudice the interest of coverage for another **Insured** under this Policy. Provided, however, that this Condition shall not apply to any **Insured** who is a parent, subsidiary or affiliate of the **Named Insured** that misrepresented, concealed or breached a term or condition, or violated a duty under this Policy.[171]

---

[169] *Id.* at 2.

[170] Policy Endorsement. No. 3.

[171] Policy § V. M.

The letter indicates that only Fund VI sought a defense. And the **SEPARATION OF INSUREDS** provision requires the Court to treat each Insured as if they were the only Insured under the Policy. So, Fund VI's letter doesn't constitute a tender for LBH because the Policy requires the Court to treat each insured separately. And the ArcLight Entities haven't submitted any evidence that LBH requested a defense from Lexington.

And as already discussed, ACP isn't entitled to any coverage at all since it isn't a Named Insured.

## V. CONCLUSION

Under the majority rule across U.S. jurisdictions, which the Court finds that USVI courts would apply, Lexington isn't responsible for pre-tender costs. This is so regardless of any demonstration or dearth of prejudice to Lexington. As well, ACP has failed to show that it is entitled to further discovery to determine whether it is covered under the Policy.

For the foregoing reasons, the Court **GRANTS** Lexington's Motion for Partial Summary Judgment, **DENIES** the ArcLight Entities' Motion for Partial Summary Judgment; and **DENIES** Freepoint's Motion for Partial Summary Judgment.

> **IT IS SO ORDERED.**
>
> /s/ *Paul R. Wallace*
> Paul R. Wallace, Judge

Original to Prothonotary

- 41 -